[No. S144831. Feb. 21, 2008.]

THOMAS METCALF, a Minor, etc., Plaintiff and Appellant, v.
COUNTY OF SAN JOAQUIN, Defendant and Respondent.

COUNSEL

Arkin & Glovsky, Sharon J. Arkin; Law Offices of Tony J. Tanke, Tony J. Tanke; Tabak Law Firm, Stewart M. Tabak; Law Offices of Lawrence Knapp and Lawrence M. Knapp for Plaintiff and Appellant.

Steven G. Ingram for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

David Wooten, County Counsel, Andrew N. Eshoo, Deputy County Counsel; Law Offices of Brunn & Flynn and Charles K. Brunn for Defendant and Respondent.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendant and Respondent.

**O**PINION

**CHIN, J.**—Government Code section 835, part of California's Government Claims Act,[1] generally provides that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes" various circumstances, including "that the property was in a dangerous condition at the time of the injury," and "either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Here, the jury found that public property was in a dangerous condition at the time of the accident giving rise to this lawsuit, but it also found that the negligent or wrongful conduct of the public entity did *not* create the dangerous condition, and the public entity did *not* have notice of the dangerous condition for a long enough time to have protected against it. Because of the latter two findings, the trial court entered judgment for the public entity. We must decide whether the Government Claims Act requires that, before a public entity can be held liable for an injury that a dangerous condition on its property caused, the plaintiff must establish that the entity negligently created or had notice of that condition.

██ We read section 835 to mean what it says. The plaintiff bears the burden of establishing either that the public entity negligently or wrongly created the dangerous condition or that the entity had notice of the dangerous condition for a long enough time to protect against the danger. Accordingly, the jury's findings were fatal to plaintiff's claim of public entity liability. The trial court correctly entered judgment for the entity, and the Court of Appeal correctly affirmed that judgment.

## I. F<small>ACTS AND</small> P<small>ROCEDURAL</small> H<small>ISTORY</small>[2]

On October 6, 2001, plaintiff Thomas Metcalf, a minor, was seriously injured in an automobile accident that occurred at an intersection that defendant County of San Joaquin (the County) controls. He was driving his parents' Toyota Corolla with a passenger, Raquel Rodriguez, on Sperry Road approaching McKinley Avenue. Sperry Road ends at McKinley Avenue,

---

[1] All further statutory references are to the Government Code unless otherwise indicated. We refer to the act of which section 835 is a part as the Government Claims Act. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741–742 & fns. 6, 7 [68 Cal.Rptr.3d 295, 171 P.3d 20].)

[2] Much of this factual recitation is taken from the Court of Appeal opinion.

forming a T-intersection that requires motorists approaching from Sperry Road to turn right or left. Railroad tracks run parallel to McKinley Avenue just before the intersection. Before the intersection, Sperry Road rises in elevation to the railroad tracks. The road then descends from the railroad tracks into the intersection with McKinley Avenue. On Sperry Road before the railroad tracks, there is a "stop ahead" sign, a railroad crossing sign, crossbucks (a post with X's), a stop sign, and a stop bar (two white lines on the pavement where motorists are required to stop for the train). On Sperry Road after the tracks before McKinley Avenue, there is a stop legend (the word "STOP" on the pavement) and a stop limit line (a white line on the pavement where motorists are required to stop). Also facing approaching motorists is a yellow sign at the end of Sperry Road with a black directional arrow informing motorists they must turn right or left onto McKinley Avenue.

As Metcalf approached McKinley Avenue, Rodriguez told him to stop before the railroad tracks and then make a left turn onto McKinley Avenue. Metcalf stopped the Corolla before the railroad tracks. As Metcalf then attempted to make a left turn onto McKinley Avenue, the Corolla collided with a truck that was driving on McKinley Avenue. The Corolla hit the truck's refrigeration unit fuel tank and one of the truck's axles. Rodriquez did not remember whether Metcalf stopped at the intersection or whether she had told him he needed to stop. Metcalf did not testify at trial and cannot recall how the accident occurred because of injuries sustained from the collision.

Metcalf sued the County for damages under the Government Claims Act. He alleged the County owned and controlled the intersection; the intersection constituted a dangerous condition in the way it was "designed, constructed and maintained"; the dangerous condition created a substantial risk of injury to people using the roadway; the County knew or should have known the dangerous condition existed; the County "negligently and carelessly" failed to "remove, repair, construct or correct the dangerous conditions . . . and negligently failed to take reasonable precautions to prevent injuries"; and, as a result of the dangerous condition, he was injured.

The matter was tried to a jury. At trial, the parties agreed that the County controlled the intersection at issue, including the "signage and the marking." The dispute was over whether the intersection was in a dangerous condition, whether the County employee responsible for sign placement acted improperly or made a "wrong" decision, and whether the County had "notice that they had a problem." Both parties presented substantial evidence, including conflicting expert testimony, on these questions. In essence, the County's witnesses testified that the signs were in the best location possible under the circumstances given the proximity of the railroad tracks; plaintiff's expert testified that it would have been possible to place the stop sign closer to

McKinley Avenue, where it would be better placed, by creating an island in the road and placing the stop sign on the island. Defendant's expert believed that creating an island would not be feasible because trucks would hit the island. Plaintiff's expert disagreed.

As the parties agreed, the court instructed the jury that to establish his claim, "Metcalf must prove all of the following: [¶] 1. That County of San Joaquin owned or controlled the property; [¶] 2. That the property was in a dangerous condition at the time of the incident; [¶] 3. That the dangerous condition created a reasonably foreseeable risk of the kind of incident that occurred; [¶] 4. That negligent or wrongful conduct of County of San Joaquin's employee acting within the scope of his or her employment created the dangerous condition or that County of San Joaquin had notice of the dangerous condition for a long enough time to have protected against it; and [¶] 5. That the dangerous condition was a substantial factor in causing the incident."

The jury returned a special verdict containing a series of 10 questions. The jury answered "yes" to questions No. 1 (whether the County owned or controlled the property), No. 2 (whether the property was in a dangerous condition at the time of the incident), and No. 3 (whether the dangerous condition create a reasonably foreseeable risk that this kind of incident would occur). It answered "no" to questions No. 4 (whether the negligent or wrongful conduct of an employee of the County acting within the scope of his or her employment created the dangerous condition), and No. 5 (whether the County had notice of the dangerous condition for a long enough time to have protected against it). Because of these latter two answers, as it was instructed, the jury did not answer the remaining questions No. 6 (whether the County was acting reasonably in failing to take sufficient steps to protect against the risk of this incident), No. 7 (whether the dangerous condition was a substantial factor in causing the incident), No. 8 (whether Thomas Metcalf was negligent), No. 9 (whether, if so, his negligence was a substantial factor in causing the incident), and No. 10 (if so, what percentage of responsibility for the incident did the jury assign to the County and Metcalf).

After the verdict, Metcalf filed a "motion for new trial and/or to vacate and enter new judgment." He argued that given the jury's finding that the intersection constituted a dangerous condition, "the jury rendered an inconsistent finding on the question of whether the negligent or wrongful conduct of an employee of the County acting within the scope of the employment created the dangerous condition." The trial court denied the motion and entered judgment for the County.

The Court of Appeal affirmed the judgment. It interpreted the plain language of section 835, subdivision (a), as requiring a plaintiff to prove that

a public entity negligently or wrongfully created the dangerous condition. It also rejected plaintiff's argument that the evidence was insufficient to support the jury's findings that the County did not negligently create, and did not have notice of, the dangerous condition.

We granted plaintiff's petition for review to decide how to interpret the relevant provisions of the Government Claims Act.

## II. DISCUSSION

The Court of Appeal found the evidence was sufficient to support the jury's findings that the County did not negligently or wrongfully create, and did not have notice of, the dangerous condition. As this fact-specific issue does not present an issue worthy of review, we accept this conclusion for purposes of review. (Cal. Rules of Court, rules 8.500(b)(1), 8.516(b)(3); see *People v. Weiss* (1999) 20 Cal.4th 1073, 1076–1077 [86 Cal.Rptr.2d 337, 978 P.2d 1257].) Our review focuses instead on the proper legal interpretation of California's Government Claims Act.

■ The nature and extent of a public entity's liability for an injury suffered on its property is governed by statute, specifically the Government Claims Act. "[A] public entity is not liable for injuries except as provided by statute (§ 815) and . . . section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property. '[T]he intent of the [Government Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.' (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624] (*Brown*).)

Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably forseeable risk of the kind of injury which was incurred, and either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 [defining actual and constructive notice] a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

██ We summarized in *Brown* what section 835 means. To establish public entity liability for injury caused by a dangerous condition of its property, "The statute requires a plaintiff to prove, among other things, that either of two conditions is true: '(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' " (*Brown, supra,* 4 Cal.4th at p. 824.) (Henceforth, we will sometimes refer to the two bases for public entity liability under § 835, subds. (a) & (b), respectively, by the shorthand terms, "negligence" and "notice.")

At trial, the court and plaintiff himself interpreted this statute to mean what we said it means in *Brown*. As plaintiff proposed, the court instructed the jury essentially in the language of section 835, including instructions that to prevail, plaintiff had to prove either "[t]hat negligent or wrongful conduct of County of San Joaquin's employee acting within the scope of his or her employment created the dangerous condition or that County of San Joaquin had notice of the dangerous condition for a long enough time to have protected against it." (See Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 1100.) In addition to proposing this particular instruction, plaintiff stated he had no objection to any of the instructions the court gave. Plaintiff also proposed the special jury verdict form the court used, which asked the jury to answer questions taken from section 835. (The verdict form was based on CACI No. VF-1101 [dangerous condition of public property].) In arguing his case to the jury, plaintiff stated that he "need[ed] to prove one of those two [referring to special verdict questions No. 4 and No. 5] in order to obtain a verdict against the County. Either that under question number four, that it was the negligent or wrongful conduct which created the condition . . . , or that they had notice of the dangerous condition for long enough to have done something to protect against it."

Plaintiff thus recognized at trial that, to prevail, he had to prove either negligence or notice. On appeal, however, after the jury rejected both bases of liability by finding no negligence and no notice, he argues that he does not have to establish negligence or, at least, that the negligence he must establish is different from common law negligence. He argues the trial court should have instructed the jury on this different form of statutory negligence. His argument fails for a number of reasons.

██ First, by requesting the instructions the court gave and not requesting any additional instructions, plaintiff has forfeited the right to argue on appeal that the court misinstructed the jury. " ' "In a civil case, each of the parties

must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion." [Citations.]' (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 950–951 [160 Cal.Rptr. 141, 603 P.2d 58].) Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken." (*Finn v. G. D. Searle & Co.* (1984) 35 Cal.3d 691, 701–702 [200 Cal.Rptr. 870, 677 P.2d 1147].) ■ " 'Instructions in the language of an applicable *statute* are properly given.' (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 280, p. 326.) ■ Where, as here, 'the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed.*' [Citations.]" (*Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520 [95 Cal.Rptr.2d 336].) Plaintiff's failure to request any different instructions means he may not argue on appeal the trial court should have instructed differently. (*Agarwal v. Johnson, supra,* at p. 951; *Conservatorship of Gregory, supra,* at pp. 520–521.)

■ In order to provide guidance to future courts, we will also discuss the merits of the issue, which the parties have fully briefed. As we explain, the trial court properly instructed the jury in the language of section 835 and asked it to answer the questions that the section makes pertinent. Specifically, it properly required the jury to find, as a basis for liability, either that the County acted negligently (§ 835, subd. (a)) or had notice of the dangerous condition (§ 835, subd. (b)). The statute's plain language permits no other interpretation. "If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) There is nothing absurd in the Legislature's imposing liability on a public entity only if it either acted negligently or had notice. Accordingly, we must follow section 835's plain meaning.

Plaintiff argues, however, that he should prevail because he established that the County deliberately created and maintained the dangerous condition, and that establishing these elements is sufficient to make the County liable. This argument fails both factually and legally. Factually, the argument is based on a false assumption—that the jury found the County *created* the dangerous condition. Although the jury found the property was in a dangerous condition at the time of the accident, it did not find that the County created that condition, much less that it did so deliberately. It was not asked to answer whether the County created the dangerous condition, but whether it did so *negligently.* It answered this question in the negative. As the County noted in arguing against plaintiff's new trial motion in the trial court, we do not know why the jury found the property was in a dangerous condition. The jury's

finding of no County negligence suggests that it based its finding of a dangerous condition on the proximity of the railroad tracks to the intersection or something else unrelated to an act or omission of a County employee. Plaintiff argues to the contrary, but his is not the only possible interpretation of the evidence and jury verdict. Because the jury was not asked to state what it found about the property to be dangerous, we do not know the basis for its findings.

■ In any event, the argument also fails legally. We agree with the Court of Appeal that, given section 835's language, "the Legislature could not have intended that *any* act by a public entity's employee that creates a dangerous condition is negligent or wrongful per se." Instead, as the Court of Appeal concluded, "to establish liability under section 835, subdivision (a), for injury caused by a dangerous condition, a plaintiff must prove that the public entity acted negligently or wrongfully even when the public entity created the dangerous condition."

■ Section 830, subdivision (a), defines a "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." However, as the California Law Revision Commission comment to that section explains, "The definition of 'dangerous condition' defines the type of property conditions for which a public entity may be held liable but does not impose liability. A public entity may be held liable for a 'dangerous condition' of public property only if it has *acted unreasonably* in creating or failing to remedy or warn against the condition under the circumstances described in subsequent sections." (Cal. Law Revision Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 830, p. 298, italics added.) "Because the official comments of the California Law Revision Commission 'are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it' [citation], the comments are persuasive, albeit not conclusive, evidence of that intent [citation]." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [132 Cal.Rptr.2d 341, 65 P.3d 807] (*Bonanno*).)

Plaintiff bases his argument that a public entity is liable whenever it creates a dangerous condition partly on a statement in a leading treatise on government tort liability: "The negligence or wrongful quality of the responsible employee's act appears to be inherent in the very fact that the condition created is, at least prima facie, dangerous. The plaintiff is not required to prove that the employee's conduct was unreasonable (*i.e.*, negligent or wrongful) in any other respect; proof of the creation of a 'dangerous condition,' as that term is defined in Govt C § 830(a), *is itself evidence of*

*negligent or wrongful conduct sufficient to support liability.*" (2 Coates et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 1999) § 12.42, p. 892 (rev. 1/07), second italics added.)[3] Plaintiff takes this statement to mean that if a jury finds the public entity created a dangerous condition, it need not also find the entity did so negligently. We do not so understand the statement. As the italicized language indicates, we take this language to mean only that evidence that the entity created a dangerous condition is itself sufficient to warrant a finding that it did so negligently. So understood, the discussion is no doubt correct. But we see nothing in that discussion that reads the words "negligent or wrongful" out of section 835, subdivision (a).

Any expansive reading of that treatise as suggesting that merely creating a dangerous condition makes a public entity liable without the additional finding that it did so negligently (or had notice of the dangerous condition) would run afoul of section 835's plain language. The treatise cites three cases in support of its statement, none of which supports plaintiff's position. (2 Coates et al., Cal. Government Tort Liability, *supra*, § 12.42, pp. 892–893.) Two of the cases have little to do with this precise issue. In *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755], we upheld a jury verdict against the State of California that was predicated on the *notice* provision of section 835, subdivision (b). (*Ducey, supra,* at pp. 716–717.) We said nothing suggesting that a public entity can be liable for a dangerous condition on its property without either notice or negligence. In *Hill v. People ex rel. Dept. of Transportation* (1979) 91 Cal.App.3d 426 [154 Cal.Rptr. 142], the Court of Appeal reversed the sustaining of the State of California's demurrer in an action for personal injuries. The main issue was whether the plaintiff had adequately alleged a dangerous condition. The Court of Appeal found she had done so. It also held that the complaint adequately pleaded a cause of action for *negligence* under section 835, subdivision (a). (*Hill, supra,* at pp. 430–431, fn. 4.) It did not suggest that liability could be predicated on section 835, subdivision (a), absent a finding of negligence.

The third case cited in the treatise is the one plaintiff relies on most heavily in arguing the County is liable notwithstanding the jury verdict. (*Pritchard v. Sully-Miller Contracting Co.* (1960) 178 Cal.App.2d 246 [2 Cal.Rptr. 830] (*Pritchard*).) We discussed *Pritchard* extensively in *Brown, supra,* 4 Cal.4th at pages 833–835. *Pritchard* was decided before the current Government Claims Act existed and was governed by the Public Liability Act of 1923. (*Pritchard, supra,* at p. 249.) "The plaintiff in *Pritchard,* who had been injured in an automobile accident, alleged that the accident was caused by the manner in which a city employee had timed traffic signals." (*Brown, supra,* at p. 833.)

---

[3] This treatise is based on a previous edition that we cited as authoritative in *Brown, supra,* 4 Cal.4th at pages 831 et seq. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980).) That previous edition contained similar language. (*Id.,* § 3.16, p. 207.)

However, the Public Liability Act of 1923 did not contain a provision comparable to section 835, subdivision (a), which today makes a public entity liable for negligently creating a dangerous condition. At the time of *Pritchard*, the relevant statute predicated liability only on a notice provision comparable to section 835, subdivision (b). (See *Brown, supra*, at p. 833; *Pritchard, supra*, at p. 249.) The statutory absence of liability for negligence was "perceived to be an unfair loophole in the Public Liability Act of 1923." (*Brown, supra*, at p. 833.) Accordingly, "[o]ver time, a rule evolved to the effect that the statutory notice requirements did not apply to dangerous conditions that had been deliberately created by public employees because, in such circumstances, knowledge was presumed." (*Ibid.*) *Pritchard* was a leading case in the evolution of this rule. (*Brown*, at p. 833.) The *Pritchard* court "reason[ed] that 'the fact that the city itself deliberately created the dangerous condition dispensed with the necessity of the notice contemplated by [the applicable statute].' " (*Brown, supra*, at p. 833, quoting *Pritchard, supra*, at p. 254.)

As we explained in *Brown, supra*, 4 Cal.4th at pages 834–835, the Legislature adopted the rule of *Pritchard, supra*, 178 Cal.App.2d 246, in section 835 when it predicated public entity liability on *either* notice *or* negligently creating a dangerous condition of property. From this circumstance, plaintiff argues that the Legislature codified a holding that a public entity is always liable whenever it creates (or at least deliberately creates) a dangerous condition without requiring an additional finding that the public entity did so *negligently*. We disagree. Although neither the *Pritchard* court nor this court in *Brown* always used qualifying words like "negligence" or "negligently" in describing *Pritchard*'s theory of liability, both opinions make clear that that theory was predicated on negligence. As *Pritchard* explained, "The action sanctioned by [the relevant part of the Public Liability Act of 1923] is *based on negligence* [citation] . . . . The elements of notice and failure to exercise reasonable diligence ordinarily are essential to show culpability on the part of the city but where it has itself created the dangerous condition it is *per se* culpable and notice, knowledge and time for correction have become false quantities in the problem of liability. It would not seem a reasonable construction of the statute to hold that a city may create a defective and dangerous condition in property . . . and be absolved from liability for the consequences upon the theory that it could not correct the danger created by its own *negligence*." (*Pritchard, supra*, at p. 256, first and third italics added.)

Thus, the *Pritchard* court concluded that if the public entity's employee created the dangerous condition, the notice element that the Public Liability Act of 1923 required was satisfied. But when the Legislature adopted the *Pritchard* rule in section 835, it provided that, to be liable under subdivision (a) of that section, the entity must have created the dangerous condition

negligently. Indeed, the Senate Legislative Committee comments to section 835 specifically so state: "Although there is no provision similar to subdivision (a) [of section 835] in the Public Liability Act of 1923, the courts have held that entities are liable under that act for dangerous conditions created by the *negligent or wrongful acts* of their employees. [*Pritchard, supra,* 178 Cal.App.2d 246]." (Sen. Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll § 835, p. 350, italics added.) As we explained in *Brown,* the California Law Revision Commission, in its recommendation to the Legislature that led to the adoption of the Government Claims Act, "had already explained the same concept in different words: 'The dangerous conditions statute should provide specifically that a governmental entity is liable for dangerous conditions of property created by the *negligent or wrongful act* of an employee acting within the scope of his employment even if no showing is made that the entity had any *other* notice of the existence of the condition or an opportunity to make repairs or take precautions against injury. The courts have construed the existing Public Liability Act as making public entities liable for *negligently created* defects.' " (*Brown, supra,* 4 Cal.4th at p. 834, first and third italics added, second italics added in *Brown,* quoting Recommendation Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 824.)

▮ Focusing on the language in *Pritchard, supra,* 178 Cal.App.2d at page 256, stating that where the public entity "has itself created the dangerous condition it is *per se* culpable," plaintiff argues that the negligence that section 835, subdivision (a), refers to is not common law negligence, but something that exists *whenever* the public entity creates the dangerous condition of property. We disagree. If the Legislature had wanted to impose liability whenever a public entity created a dangerous condition, it would merely have required plaintiff to establish that an act or omission of an employee of the public entity within the scope of his employment created the dangerous condition. Instead, section 835, subdivision (a), requires the plaintiff to establish that a *"negligent or wrongful* act or omission of an employee of the public entity within the scope of his employment created the dangerous condition." (Italics added.) Plaintiff's interpretation would transform the highly meaningful words "negligent or wrongful" into meaningless surplusage, contrary to the rule of statutory interpretation that courts should avoid a construction that makes any word surplusage. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

▮ "While there is, thus, ample evidence that section 835, subdivision (a), was intended to incorporate the *Pritchard* rule" (*Brown, supra,* 4 Cal.4th at p. 835), the Legislature incorporated that rule only to the extent it was predicated on negligence. If a public entity created a dangerous condition of property, and especially if it did so deliberately, that circumstance might

support a jury finding that it acted negligently. But the operative question the jury must answer under section 835, subdivision (a), is not whether the public entity created the dangerous condition, or even whether it did so deliberately, but whether it did so negligently.

Our discussion in *Bonanno, supra*, 30 Cal.4th 139, bolsters this conclusion. The issue in *Bonanno* was whether the location of a bus stop could constitute a dangerous condition of public property within the meaning of sections 830 and 835 because the location caused patrons to cross a busy street that had no crosswalk. We concluded that those facts could give rise to a dangerous condition within the meaning of those statutes. But we cautioned that we were not reaching any conclusion regarding the *other* elements of a cause of action, including "that the public entity either created the dangerous condition through a *negligent or wrongful act or omission* of its employee, or had actual or constructive notice of the dangerous condition sufficiently in advance of the accident as to have had time to remedy it." (*Bonanno, supra*, at p. 155, italics added.) As is evident, we viewed the element of the public entity's negligence as separate and not included within the element of the existence of a dangerous condition.

 The definition of dangerous condition found in section 830, combined with the traditional requirement—codified in section 835, subdivision (a)—that the public entity's creation of the dangerous condition must have been *unreasonable*, reflects an ordinary-negligence standard. (See *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 [110 Cal.Rptr.2d 528, 28 P.3d 249] ["Under general negligence principles, . . . a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an *unreasonable* risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct" (italics added)]; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239]; Civ. Code, § 1714; CACI No. 1001 [defining the basic duty of care in ordinary premises-liability dangerous condition cases].)

Plaintiff also argues that section 835.4 places on the public entity the burden of establishing that it acted reasonably and claims that doing so is inconsistent with requiring him to show negligence. Subdivision (a) of section 835.4 provides: "A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the

practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury."[4]

In this case, the basis of the jury's verdict of no liability was that the County did not negligently create the dangerous condition and did not have notice of it. The jury rendered no verdict based on section 835.4. Although the special verdict form asked a question based on section 835.4, the court did not instruct the jury on this defense, and the jury left that question unanswered. The court gave no instruction along the lines of CACI No. 1111 (regarding § 835.4, subd. (a)) or CACI No. 1112 (regarding § 835.4 subd. (b)).[5] But because plaintiff relies on the interplay between sections 835 and 835.4 in his argument, we consider how those two sections interact.

Section 835.4 provides a defense to liability that the plaintiff has otherwise established under section 835. As the Senate legislative committee comment to section 835 explains, "Liability does not necessarily exist if the evidentiary requirements of this section are met. Even if the elements stated in the statute [section 835] are established, a public entity may avoid liability if it shows that it acted reasonably in the light of the practicability and cost of pursuing alternative courses of action available to it. In addition to the defenses available to public entities under Section 835.4," other defenses may also be available. (Sen. Com. com., reprinted at 32 West's Ann. Gov. Code, *supra*, foll. § 835, p. 350.)

The Court of Appeal found conceptual difficulties in the interplay between section 835, subdivision (a) (plaintiff must establish negligence) and section 835.4, subdivision (a) (providing a defense if the public entity establishes that the act or omission that created the condition was reasonable). As it noted, normally "negligence is the absence of reasonableness." (Citing *Richardson v. Kier* (1867) 34 Cal. 63, 75.) That being the case, the court reasoned, one cannot reasonably act negligently. Because of this conundrum, the Court of Appeal found that section 835.4 does not provide an affirmative defense.

---

[4] Section 835.4, subdivision (b), is an equivalent provision regarding liability based on the notice provision of section 835, subdivision (b): "A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

[5] We note that if, as here, the trial court does not instruct the jury on the section 835.4 defense, it should not include a question pertaining to that defense in the verdict form given the jury. Including such a question without proper instruction could only cause confusion if the jury were to find either negligence or notice (or both) and then turn to the next question regarding the section 835.4 defense.

We disagree. Section 835.4 clearly creates an affirmative defense that the public entity must establish. (*Hibbs v. Los Angeles County Flood Control Dist.* (1967) 252 Cal.App.2d 166, 172 [60 Cal.Rptr. 364].) Moreover, the Legislature created this defense specifically for public entities. The California Law Revision Commission explained, "Under this section, a public entity may absolve itself from liability for creating or failing to remedy a dangerous condition by showing that it would have been too costly and impractical for the public entity to have done anything else.[6] [¶] This defense has been provided public entities in recognition that, despite limited manpower and budgets, there is much that they are required to do. Unlike private enterprise, a public entity often cannot weigh the advantage of engaging in an activity against the cost and decide not to engage in it. Government cannot 'go out of the business' of governing. Therefore, a public entity should not be liable for injuries caused by a dangerous condition if it is able to show that under all the circumstances, including the alternative courses of action available to it and the practicability and cost of pursuing such alternatives, its action in creating or failing to remedy the condition was not unreasonable." (Cal. Law Revision Com. com., reprinted at 32 West's Ann. Gov. Code, *supra*, foll. § 835.4, p. 434; see *Bonanno, supra*, 30 Cal.4th at p. 156 [quoting some of this language].)

The reasonableness standard referred to in section 835.4 differs from the reasonableness standard that applies under sections 830 and 835 and ordinary tort principles. Under the latter principles, the reasonableness of the defendant's conduct does not depend upon the existence of other, conflicting claims on the defendant's resources or the political barriers to acting in a reasonable manner. But, as the California Law Revision Commission recognized, public entities may also defend against liability on the basis that, because of financial or political constraints, the public entity may not be able to accomplish what reasonably would be expected of a private entity.

---

[6] The concurring and dissenting opinion is correct that in this comment to section 835.4, the California Law Revision Commission used the word "creating" without a qualifying word such as "negligently" or "unreasonably." (Conc. & dis. opn., *post*, at p. 1140.) However, as we have explained, (1) in its comment to section 830, the same commission stated that a public entity may be liable for a dangerous condition "only if it has acted unreasonably in creating" the condition (Cal. Law Revision Com. com., reprinted at 32 West's Ann. Gov. Code, *supra*, foll. § 830, p. 298); (2) the Senate Legislative Committee comments to section 835 stated that public entities are liable "for dangerous conditions created by the negligent or wrongful acts of their employees" (Sen. Com. com., reprinted at 32 West's Ann. Gov. Code, *supra*, foll. § 835, p. 350); and, most importantly, (3) section 835, subdivision (a), requires, as a condition of liability, that the plaintiff establish that a "negligent or wrongful act . . . created the dangerous condition." We do not believe the comment to section 835.4 permits us to disregard the comments to sections 830 and 835 or, above all, to read section 835, subdivision (a), as if it did not contain the words "negligent or wrongful."

Our decision in *Ducey v. Argo Sales Co., supra,* 25 Cal.3d 707, provides an example of the defense that section 835.4 defines. The plaintiff in that case sought to impose liability on the state for an injury assertedly caused by the state's failure to place median barriers on a highway. We analyzed the plaintiff's claim under section 835, subdivision (b). Then we considered the defendant's defense, which was that "as a matter of financial reality it cannot afford to construct median barriers on all freeways on which such barriers are needed . . . ." (*Ducey, supra,* at p. 720.) This is the defense established by section 835.4, subdivision (b), but it basically parallels the defense established by subdivision (a) of that statute. The defendant presented evidence that the state highway commission had appropriated funds for median barriers, but subsequently withdrew the appropriation because it planned to widen and otherwise change the configuration of the highway. (*Ducey, supra,* at pp. 713–714.) We concluded that it was for the jury to decide whether the state had established its defense pursuant to section 835.4. (*Ducey, supra,* at p. 720.) The jury in that case was apparently unpersuaded by the defense evidence; it rendered a verdict for the plaintiff despite proper instructions under section 835.4. (*Ducey, supra,* at p. 720.)

In sum, we conclude that negligence under section 835, subdivision (a), is established under ordinary tort principles concerning the reasonableness of a defendant's conduct in light of the foreseeable risk of harm. The plaintiff has the burden to demonstrate that the defendant's conduct was unreasonable under this standard, or that it had notice under section 835, subdivision (b). If the plaintiff carries this burden, the public entity may defend under the provisions of section 835.4—a defense that is unique to public entities. In this case, because the jury found the County neither acted negligently nor had notice of the dangerous condition, the County is not liable for plaintiff's injuries.

### III. Conclusion

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—I concur in the judgment affirming the Court of Appeal. Because plaintiff requested the instructions given the jury, he cannot now complain they were erroneous or incomplete. I write separately to distance myself from any implication by the majority that the instructions were correct and to state my view of what the statutory scheme governing a public entity's liability for injuries caused by a dangerous condition on its property requires the plaintiff to prove.

As the majority states, the plaintiff must show that the defendant acted negligently (or wrongfully), and the jury may properly be so instructed. As the majority also states, if the plaintiff shows that the defendant created the dangerous condition, that showing is "itself sufficient to warrant a finding that it did so negligently." (Maj. opn., *ante*, at p. 1133.) Here, the jury did not find that defendant *created* the dangerous condition (see *id.* at p. 1131); hence it lacked that basis on which to hold defendant liable for negligence. But in a case where the jury finds the defendant did create a dangerous condition, i.e., "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used" (Gov. Code,[1] § 830, subd. (a)), the plaintiff has met his or her initial burden to show the defendant did so negligently, and the jury may so find, unless the defendant proves to the jury's satisfaction, as permitted by section 835.4, that its act or omission in creating the dangerous condition "was reasonable." (*Id.*, subd. (a).) As the California Law Revision Commission comment to section 835.4 explains, "Under this section, a public entity may absolve itself from liability *for creating* or failing to remedy a dangerous condition by showing that it would have been too costly and impractical for the public entity to have done anything else." (Cal. Law Revision Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 835.4, p. 434, italics added.)

As the majority correctly notes, " 'Because the official comments of the California Law Revision Commission "are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it" [citation], the comments are persuasive, albeit not conclusive, evidence of that intent [citation].' (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [132 Cal.Rptr.2d 341, 65 P.3d 807] . . . .)" (Maj. opn., *ante*, at p. 1132.) Clearly the commission was of the view, as am I, that once the plaintiff has shown the public entity has *created* a dangerous condition, the entity is liable, subject to its ability to advance the affirmative defense that to have done anything else would have been too costly and impractical.

In sum, I agree with the majority that the trial court here "properly required the jury to find, as a basis for liability, either that the County acted negligently (§ 835, subd. (a)) or had notice of the dangerous condition (§ 835, subd. (b))." (Maj. opn., *ante*, at p. 1131.) But the trial court's instructions were incomplete, thus creating the possibility that the public entity defendant might, contrary to legislative intent, benefit from a section 835.4 defense to which it had not proven its entitlement. The court should have further

---

[1] All statutory references are to the Government Code.

instructed the jury that creation of a dangerous condition is negligence, unless the public entity can show it was reasonable under the circumstances.