Filed 6/9/16  Moore v. Burbank CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SARAH MOORE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF BURBANK,<br><br>    Defendant and Respondent. | B259034<br><br>(Los Angeles County<br>Super. Ct. No. EC059408) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Samantha Jessner, Judge.  Affirmed.

Mancini & Associates, Marcus A. Mancini, Christopher M. Barnes; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Plaintiff and Appellant.

Amelia Ann Albano, City Attorney, and Carolyn A. Barnes, Assistant City Attorney, for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff Sarah Moore challenges the trial court's grant of summary judgment to defendant City of Burbank (the City) on a single claim for a dangerous condition on public property after she tripped and fell on an uneven sidewalk, sustaining injuries. We affirm.

## BACKGROUND

According to the evidence presented at summary judgment, in the afternoon of September 7, 2011, plaintiff was walking home from a doctor's appointment when she tripped and fell on a raised edge of a well-traversed public sidewalk near her apartment in the City. That portion of the sidewalk concrete had been uplifted between one and a quarter and two inches by the roots of a nearby tree planted in the City parkway. There was evidence the tree was leaning to the side and casting shadows on the area. Plaintiff had moved into the area a week earlier and could not recall if she had walked that part of the sidewalk before or if she had noticed the uneven sidewalk, although she admitted she had walked past it on the way to her doctor's appointment. She was wearing flat loafers with gripper soles, was not carrying anything, and was looking straight ahead. She fell forward onto her left hand and both knees and broke all the bones in her left wrist, requiring surgery and 12 weeks of physical therapy. She had lingering problems with her left hand and may need additional surgery to correct the misalignment of the bones.

Several months later on February 29, 2012, plaintiff submitted a claim in excess of $3 million to the City for her injuries from this fall. A week later on March 7, 2012, James Villasenor, a supervisor with the City's street maintenance and repair division for the Public Works Department (department), was informed of her claim. He went to the location the next day and found the sidewalk was raised one and a quarter inches due to the roots of the adjacent parkway tree. He also believed a nearby palm tree could have contributed, although palm trees do not usually cause sidewalk damage. He directed his pothole crew to apply hot asphalt to the upraised portion of the sidewalk as a temporary fix. The sidewalk was scheduled to be removed and replaced "relatively very close" to when he inspected it, and the City subsequently replaced it.

The City neither accepted nor rejected plaintiff's claim, and she filed the present complaint in September 2012, pleading a single claim for negligence. She alleged the City knew or should have known about the dangerous condition of the sidewalk, created the dangerous condition, and failed to warn or correct the dangerous condition, thereby causing her injuries.

The City moved for summary judgment, arguing (1) it was immune from a common law claim for negligence; (2) it had no actual or constructive notice of any dangerous condition; (3) the sidewalk was not a dangerous condition; (4) it had a reasonable sidewalk inspection program that did not reveal the dangerous condition, providing a complete defense under Government Code section 835.4, subdivision (b); (5) the City did not proximately cause plaintiff's injuries; and (6) the dangerous condition was trivial. In support of the motion, Villasenor explained in a declaration that he oversees an asphalt repair crew and a concrete crew for the City. The concrete crew is responsible for sidewalk repairs and responding to complaints about uneven sidewalk problems. If his department is notified of a problem, he would place the location on the top of the crews' list of locations to fill. Additionally, the City manages and maintains sidewalks through a City sidewalk inspection program, which was in effect at the time of plaintiff's fall. Under the program, the City is divided into 20 sections and each year two sections are physically walked and needed repairs are identified, which results in the City's 365 miles of sidewalk being inspected every 10 years. The location of plaintiff's fall was within section 2, which was inspected in 2006 and any needed repairs were done at that time. Section 2 was also inspected in 2001 under the City's prior inspection program.

Villasenor further explained the City takes a four-pronged approach to maintain its sidewalks. First, it relies on residents to report problems and needed repairs, which are immediately referred to and addressed by the department's field services crews. Second, the field services supervisor continuously visually assesses the sidewalks and dedicates more than half of the City's field services crews to repairing problems, including eight full-time concrete employees dedicated to repairing sidewalks and two full-time asphalt

3

employees who spend half their time repairing sidewalks. The City spends $260,000 each year on these two prongs of its sidewalk maintenance program. Third, the City relies on the sidewalk inspection program, discussed above, which costs $500,000 each year. And fourth, the City requires adjacent property owners to upgrade sidewalks when they upgrade or remodel their property as part of the City's permitting process. Prior to implementing the sidewalk inspection program in 2005, a Public Works employee would walk the sidewalks to document defects.

Villasenor reviewed all of his department's records going back five years (which were the only available records due to the department's five-year record retention policy) and found no prior injuries or complaints about the location of plaintiff's fall. The first time he became aware of the uneven sidewalk at that location was in March 2012, after plaintiff filed her claim with the City. In his opinion, the uneven sidewalk where plaintiff fell was not a dangerous condition for a person using reasonable care. In her deposition, plaintiff also testified she was unaware of any complaints or accidents involving the sidewalk where she fell.

In opposition to summary judgment, plaintiff objected to some of the City's evidence and argued the defect in the sidewalk was not trivial, the City had actual and constructive notice of the dangerous condition of the sidewalk, a City employee created the dangerous condition by failing to reasonably inspect and repair the defect, and the City proximately caused her injury. She submitted a declaration from expert arborist Ruben Green, who inspected the location of her fall in April 2014, more than two and a half years after her fall and after the City had replaced the sidewalk. He opined the tree in the parkway was a 20-year-old Chinese pistache tree and its root system likely caused the uplifted sidewalk. In addition, he believed the limited available planting space did not allow sufficient room for root growth and was also a contributing factor to the sidewalk damage. He noted the curb adjacent to the tree had been pushed out two inches, which was possibly caused by a larger tree that had been removed. He did not believe the nearby palm tree contributed to the uplifted sidewalk.

4

In reply, the City objected to some of plaintiff's evidence, most notably the evidence that it had repaired the sidewalk after plaintiff's fall.

The trial court ultimately granted the motion. It ruled on the parties' objections, including sustaining the City's objection to the evidence of its subsequent repair of the sidewalk. Treating plaintiff's negligence cause of action as a statutory claim under Government Code section 835, the court found a triable issue of fact over whether the defect in the sidewalk was trivial, but concluded the City lacked actual or constructive notice as a matter of law. The City had no actual notice because, in 2006, it had inspected the portion of sidewalk where plaintiff fell and found no defect, and records going back to that time contained no complaints. The City had no constructive notice because plaintiff failed to offer evidence of how long the sidewalk was displaced. The court rejected plaintiff's argument based on Green's declaration that a larger tree might have been at the location for at least 20 years and its roots might have caused the sidewalk displacement. The court noted Green did not say the roots of a prior tree caused the sidewalk displacement, which was inconsistent with his opinion that the roots of the current tree uplifted the sidewalk. Thus, plaintiff's argument that the defect was present for at least 20 years was speculation. For the same reason, the court also rejected plaintiff's claim that City employees' failure to inspect and repair the location caused the dangerous condition.

Plaintiff filed a motion for reconsideration, adding an opinion to Green's declaration that the sidewalk displacement began as early as 2006, and the displaced sidewalk would have been visible upon a "cursory inspection" between 2006 and plaintiff's fall in September 2011. The court denied the motion and entered judgment for the City. Plaintiff timely appealed.[1]

---

[1] Plaintiff does not challenge the trial court's denial of the motion for reconsideration and has disclaimed any reliance on Green's additional opinions on appeal.

5

**DISCUSSION**

## 1. *Legal Standard*

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether the defendant has conclusively negated a necessary element of the plaintiff's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (Code Civ. Proc., § 437c, subd. (*o*); *Guz, supra*, at p. 334.) We review the trial court's evidentiary rulings for abuse of discretion. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 (*Serri*).)

## 2. *Government Claims Act*

The City's potential liability in this case is governed exclusively by the Government Claims Act, specifically Government Code section 835. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129 (*Metcalf*).) That provision states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov. Code, § 835; see *Metcalf, supra*, at p. 1130.)

### 3. Actual Notice

A public entity has actual notice of a dangerous condition under section 835.2, subdivision (a) if it had "actual knowledge of the existence of the condition and knew or should have known of its dangerous character." To create a triable issue of fact, there must be "some evidence that the employees had knowledge of the particular dangerous condition in question." (*State v. Superior Court* (*Rodenhuis*) (1968) 263 Cal.App.2d 396, 399 (*Rodenhuis*).) The undisputed evidence demonstrates the City did not have actual notice of the uneven sidewalk, and plaintiff does not argue otherwise. The City proffered uncontradicted evidence that it inspected the sidewalk in 2001 and 2006 and did not note any defects; Villasenor searched the prior five years of City records and found no complaints or reports of any problems at the location; and plaintiff was unaware of any prior complaints or accidents at this location.

### 4. Constructive Notice

Under Government Code section 835.2, subdivision (b), a public entity has constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to: [¶] (1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property. [¶] (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition." Stated more plainly, "constructive notice may be imputed if it can be shown that an *obvious* danger existed for an adequate period of time before the accident to have permitted the state employees, in

7

the exercise of due care, to discover and remedy the situation had they been operating under a reasonable plan of inspection." (*Rodenhuis, supra*, 263 Cal.App.2d at p. 400.)

Plaintiff offered no evidence the sidewalk was in an obviously dangerous condition long enough for City employees to discover it in exercising due care. First, plaintiff put forth no evidence that the City's four-pronged, $760,000-a-year inspection system was not reasonably adequate or that the City failed to implement it with due care. To be frank, we see little else the City could have done to uncover a two-inch defect at one spot in its 365 miles of sidewalks when it inspected that location only five years before plaintiff's accident and had not received any complaints or reports about the condition in the meantime. Placing an additional burden on the City to continually inspect its sidewalks for defects of this nature would create an imbalance between "the practicability and cost of inspection" and the "likelihood and magnitude of the potential danger" from the condition. (Gov. Code, § 835.2, subd. (b)(1).) Second, plaintiff offered no evidence that an "*obvious condition existed a sufficient period of time before the accident,*" so that the City should have reasonably discovered it. (*Rodenhuis, supra*, 263 Cal.App.2d at p. 400.) While plaintiff's expert Green opined as to the possible *causes* of the sidewalk displacement, he offered no opinion as to when in the tree's lifetime its roots would have lifted the sidewalk, so there was nothing to show the condition existed long enough for the City to have reasonably discovered it.

Plaintiff points out that the absence of prior complaints or injuries involving the dangerous condition does not show a lack of notice as a matter of law. (See, e.g., *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 569.) While true, that was not the only evidence in this case. The absence of prior complaints or injuries was coupled with the City's reasonable inspection procedure and a complete lack of evidence that the displaced sidewalk was obvious or existed long enough for the City to have discovered it. And plaintiff's suggestion that complaints might have been made more than five years before plaintiff's fall but lost to the City's document retention policy is only speculation.

Plaintiff also points to a portion of Villasenor's deposition testimony to argue "he admittedly did not review any documents to determine whether the sidewalk defect had existed 'at the time that the City did the inspection and repair' of that section," so he merely "*assumed* the sidewalk area where Moore fell was not repaired because 'obviously they didn't find any problems on the street.'" This takes Villasenor's testimony out of context. He was asked, "Have you looked at any documents to find out whether or not this crack or rupture in this sidewalk that is alleged to have caused [plaintiff's] injury existed at the time that the City did the inspection and report in section 2?" He responded, "No." He was then asked, "Would there be something that would identify that? I guess my question is when the city employees are going through these various sections to determine what portions of the sidewalk[s] are going to be fixed, is there someplace that they document the condition of the sidewalks?" He responded, "Just in the area that they're going to do some type of work, either grinding or removal." He was asked, "And have you found any documents that commented on this particular section of section 2 as either needing or not needing any repairs?" He responded, "No." In other words, City employees only documented the sidewalk areas that needed repairs. Because Villasenor could find no documentation for repairs in the area where plaintiff fell when it was inspected in 2006, he did not believe any repairs were needed. Plaintiff offered no evidence to undermine his reliance on the City's inspection procedure to reach that conclusion.

Finally, plaintiff suggests the City was on constructive notice because the sidewalk where she fell was scheduled to be replaced "relatively very close" to when Villasenor inspected it in March 2012. The trial court excluded this evidence pursuant to Evidence Code section 1151, which states: "When, after the occurrence of an event, remedial or precautionary measures are taken, which if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to

9

prove negligence or culpable conduct in connection with the event."**2** Plaintiff acknowledges this evidence would be inadmissible to show the sidewalk constituted a dangerous condition, but she argues it was admissible to show the City had notice of the condition of the sidewalk. (See *Alpert v. Villa Romano Homeowners Association* (2000) 81 Cal.App.4th 1320, 1339-1341 [Evid. Code, § 1151 did not bar remedial evidence to show defendant knew of sidewalk defect prior to plaintiff's fall].) But this evidence was not probative of the City's notice *prior to* plaintiff's fall. Villasenor inspected the area months after plaintiff fell in September 2011 and a week after she filed her claim with the City. Evidence that the City scheduled the sidewalk to be replaced "relatively very close" to that time does not show notice of the defect before plaintiff fell.

### 5. *City's Negligence*

As an alternative to the notice requirement, plaintiff argues on appeal that City employees negligently created the dangerous condition of the sidewalk by "negligently planting a tree with a large and spreading lateral root system in a limited planting space." She did not present this theory in opposition to summary judgment, so we find it waived. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29.) Even if not waived, this theory is not supported by any evidence in the record. Traditional negligence principles govern the inquiry into whether a city employee's negligent act or omission created the dangerous condition under Government Code section 835, subdivision (b). (*Metcalf, supra,* 42 Cal.4th at p. 1136.) Under general negligence principles, plaintiff was required to show the City failed to "'exercise due care in [its] own actions so as not to create an *unreasonable* risk of injury to others'" and it was "'reasonably foreseeable'" that individuals "'may be injured as a result of the

---

**2**     Government Code section 830.5 applies this exclusionary rule to government entities: "(a) Except where the doctrine of res ipsa loquitur is applicable, the happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition. [¶] (b) The fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury."

[City's] conduct.'" (*Ibid.*) Plaintiff cites Green's opinion that one *cause* of the uneven sidewalk was that "the limited available planting space did not allow sufficient room for root growth." But she offered no evidence on the level of care required in selecting trees to plant at the location of her fall or that the City's selection of the Chinese pistache tree fell below that level, thereby creating a reasonably foreseeable risk that the tree's root system would lift the adjacent sidewalk and create a condition dangerous to plaintiff and others. Thus, this theory cannot defeat summary judgment.[3]

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

---

[3] The City did not respond to this argument in its brief on appeal. Nevertheless, we will not treat the City's failure to respond as a concession that this argument has merit, given plaintiff's own failure to raise it below or support it with any evidence. (*Griffin v. Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505 ["[E]ven a respondent's *complete* failure to address an appellant's argument does not require us to treat the failure to respond as a concession the argument has merit."].)