Filed 6/29/15  Shalant v. Girardi CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSEPH SHALANT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THOMAS V. GIRARDI,<br><br>    Defendant and Respondent. | B251785<br><br>(Los Angeles County<br>Super. Ct. No. SC109060) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard Fruin, Judge.  Affirmed.

Joseph L. Shalant, in pro. per., for Plaintiff and Appellant.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi & Keese, and Shawn J. McCann for Defendant and Respondent.

_____

Joseph Shalant appeals from the judgment after a jury returned a special verdict in favor of defendant Thomas Girardi in Shalant's action for malicious prosecution. The jury found that Girardi lacked probable cause to bring the underlying action against Shalant but that Girardi did not act with malice. We affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

The Underlying Actions

1.  *Shalant's First Suit Against Girardi.*

In December 2006, Shalant, represented by counsel, filed an action against attorney Thomas Girardi, Continental Casualty Company, and National Union Fire Insurance Company.[1] The complaint alleged that Shalant and Girardi jointly represented Jose Castro and his wife as the plaintiffs in a personal injury action arising from an automobile accident that rendered Jose Castro a paraplegic. National Union was the defendants' insurer.

According to Shalant's complaint against Girardi, when the Castros' matter settled, Continental and National Union issued the settlement payment to the Castros and Girardi alone without including Shalant as a payee or giving him notice despite National Union's awareness of his attorney's fees lien on the settlement proceeds. Thereafter, the complaint alleges, Girardi paid Shalant $745,000 of the proceeds as attorney's fees but refused to pay an additional $27,745.34 to which Shalant was entitled as the balance of his fee interest and reimbursement of costs. Shalant alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, an accounting, and intentional and negligent interference with prospective economic advantage. Shalant sought to recover actual damages in the amount of $27,745.34 and punitive damages in the amount of $5,000,000.

---

[1]     Continental was dismissed early in the litigation.

## 2. *Girardi's Cross-complaint Against Shalant; Castros' Complaint Against Shalant.*

Girardi filed a cross-complaint against Shalant.  He alleged that Shalant was disbarred on May 18, 2005, before entering into the contract that formed the basis for Shalant's complaint and that Shalant had misrepresented his bar status to Girardi and the Castros to induce them to enter into the contract.  Girardi sought to recover actual damages in the amount of $745,000 and punitive damages in the amount of $7,000,000.

Shalant's state bar records (introduced by Girardi) indicated that the actual chronology differed from the allegations in Girardi's cross-complaint.  Shalant was involuntarily "enrolled inactive" by the State Bar on May 18, 2005, effective no later than May 21, 2005.  On December 14, 2005, the Supreme Court filed an order disbarring Shalant, effective January 13, 2006.

The following month Jose Castro, represented by Girardi, filed a complaint against Shalant.  The complaint alleged claims for fraud, concealment, negligent misrepresentation, and breach of fiduciary duty.  Castro claimed that Shalant either misrepresented or failed to disclose various facts about his impending discipline by the bar (e.g., Shalant allegedly told Castro that he "had a minor infraction with the California State Bar" that would likely lead to nothing more than a suspension of at most 90 days), and that as a result Castro entered into a joint-representation and fee-splitting agreement with Shalant and Girardi that contained "less favorable terms regarding fees and costs than [Castro] was entitled to."  In his action against Shalant, Castro sought to recover actual damages in the amount of $745,000 and punitive damages in the amount of $7,000,000.

## 3. *Dismissal of Shalant's Action Against Girardi.*

In September 2008, the trial court heard and granted motions by National Union and Girardi to dismiss Shalant's suit against them on the ground that Shalant was a vexatious litigant who lacked court approval to file that action.  (Code Civ. Proc., § 391.7.)  We subsequently reversed that dismissal order and the Supreme Court affirmed

3

our ruling. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1168.) (See discussion of the trial on Shalant's suit at p. 6, *post*.)

4. *Judgment in the Actions By Girardi and Castro Against Shalant*.

In the meantime, the case proceeded to a jury trial on Girardi's and Castro's claims against Shalant. The evidence introduced at trial revealed the following sequence of events: The Castros first retained Shalant to represent them in their personal injury matter no later than the spring or summer of 2003. Castro testified that Girardi substituted for Shalant "sometime around June 2005" and that he understood that thereafter Shalant "would no longer be representing him" and that Girardi would be his "only lawyer." The Castros settled the personal injury matter in January 2006.

The jury found by special verdict that Shalant did not make a false representation of an important fact to Castro or Girardi and that Shalant did not intentionally fail to disclose to Castro or Girardi an important fact that they did not know and could not reasonably have discovered. The jury also found, however, that Shalant breached the duty of an attorney and that the breach was a substantial factor in causing Castro harm.

The jury determined that Castro had suffered no economic damages but had suffered noneconomic damages in the amount of $55,000. The jury also awarded Castro punitive damages of $100,000, having found that Shalant acted with malice, oppression, or fraud.

The jury awarded no damages to Girardi.

In February 2009, the trial court entered judgment on the jury verdict in favor of Castro.

5. *Reversal of the Judgment for Castro*.

We reversed the judgment for Castro on the ground it was not supported by substantial evidence. We reasoned as follows.

On the cause of action for breach of fiduciary duty the court instructed the jury: "Jose Castro claims that he was harmed because Joseph L. Shalant breached an attorney's duty in failing to disclose his state bar status to his clients. To establish this claim, Jose

4

Castro must prove all of the following: That Joseph L. Shalant breached the duty of an attorney to disclose his state bar status to his clients; that Jose Castro was harmed; and that Joseph L. Shalant's conduct was a substantial factor in causing Jose Castro's harm."

The jury was not instructed on any other legal or factual theory of breach of fiduciary duty. Thus, the only basis on which the jury could have found a breach of fiduciary duty was by finding that Shalant breached a duty "to disclose his state bar status" to Castro. The record contains no evidence that Shalant breached such a duty. The record does contain evidence that after being enrolled inactive by the state bar in May 2005 but before being disbarred in December 2005 (effective in January 2006), Shalant did not disclose his inactive status to Castro. But that evidence cannot support Castro's claim that Shalant breached a duty "to disclose his state bar status" because respondents cited no authority, and we found none, that Shalant had a duty to disclose to Castro that Shalant was enrolled inactive by the State Bar. Once he was enrolled inactive, Shalant could no longer practice law, and the record reflected that Shalant did promptly arrange for Girardi to substitute in as Castro's attorney. Respondents cited no authority for the proposition that Shalant also had a duty to disclose to Castro *why* he would no longer be handling the case.

The record likewise contained no evidence that Shalant breached a duty to disclose to Castro that Shalant was disbarred. The Supreme Court entered its order disbarring Shalant on December 14, 2005, so the order was effective January 13, 2006. (Cal. Rules of Court, rule 9.18(a).) By Castro's admission, Shalant ceased representing Castro "sometime around June 2005" and that he understood that thereafter Shalant "would no longer be representing" him and that Girardi would be his "only lawyer."

Castro cited no authority for the proposition that Shalant had a duty to disclose his disbarment to former clients. In addition, the Supreme Court's disbarment order directed Shalant to comply with subdivision (a) of rule 9.20 (formerly rule 955) of the California Rules of Court within 30 days of the effective date of the Court's order. The rule required Shalant to "[n]otify all clients being represented in pending matters" of his

5

disbarment. (Cal. Rules of Court, rule 9.20, subd. (a)(1).) The rule, and hence the order, did not require Shalant to notify former clients like Castro—the notification requirement is expressly limited to clients being represented in pending matters, and Castro admitted that Shalant no longer represented him.

Finally, the deadline for notification under the Supreme Court's order was February 12, 2006 (30 days after the effective date of January 13, 2006). The record contained no evidence that Shalant failed to notify Castro of his disbarment by February 12. Indeed, Castro testified that he learned of Shalant's disbarment in "early February 2006." Consequently, even if Castro did not learn of the disbarment *from Shalant*, there was no evidence of causation, because Castro could not have been harmed by Shalant's failure to disclose facts Castro already knew.

Accordingly, we reversed and directed the trial court to enter judgment in favor of Shalant on Castro's complaint for breach of fiduciary duty. (*Castro v. Shalant* (Apr. 5, 2010, B214302) [nonpub. opn].)

6. *Trial on Shalant's Original Complaint Against Girardi for Additional Attorney Fees and Costs.*

In 2012, Shalant's claim against Girardi for additional attorney fees and costs proceeded to trial. First, the court ruled that the fee sharing agreement between Shalant and Girardi was unenforceable but that Shalant could seek to recover on a theory of quantum meruit. Thereafter, in a jury trial on that theory the jury found Shalant was entitled only to the $745,000 fee he had already received and that he was not entitled to costs he incurred in representing Castro. We dismissed Shalant's attempts to appeal that judgment for failure to comply with procedural rules.

7. *Shalant's suit for malicious prosecution against Girardi.*

In the meantime, Shalant filed the present action for malicious prosecution against Girardi and Castro. Shalant dismissed the action against Castro at the conclusion of the evidence and the jury returned a special verdict in favor of Girardi.

6

The jury's special verdict found that "a reasonable person in Thomas Girardi's circumstances" would *not* have believed that Shalant "made a false representation of an important fact" or that he "intentionally concealed an important fact" that Girardi "did not know and could not have reasonably discovered"  The jury also found, however, that Girardi did *not* "act primarily for a purpose other than succeeding on the merits of the claim[.]"  In other words, the jury found that Girardi lacked probable cause to bring his cross-complaint for damages against Shalant but that Girardi did not act with malice in doing so.

## DISCUSSION

**I.  THE COURT DID NOT ERR IN ITS INSTRUCTIONS ON MALICIOUS PROSECUTION.**

The court gave the jury the CACI instruction on malicious prosecution.  It states in relevant part that to establish this tort Shalant had to prove:  (1) that Girardi "was actively involved" in bringing the underlying lawsuit; (2) that the lawsuit ended in Shalant's favor; (3) that "no reasonable person" in Girardi's circumstances "would have believed that there were reasonable grounds to bring the lawsuit against" Shalant; and (4) that Girardi "acted *primarily* for a purpose other than *succeeding on the merits of the claim.*"  (CACI No. 1501; italics added.)

Shalant maintains the court's instruction was faulty for a number of reasons including the court's failure to define the word "primarily" and to state that malice can be established by evidence that the defendant acted out of hostility, ill will, spite, vindictiveness or a desire to intimidate the plaintiff.

The record contains no request by Shalant for an instruction amplifying or clarifying the malice element of malicious prosecution.  Shalant's failure to request additional or qualifying instructions on this issue forfeits this contention on appeal.  (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.)

7

**II. THE JURY'S FINDING OF LACK OF MALICE IS SUPPORTED BY THE RECORD.**

The jury found that Girardi lacked probable cause to bring his cross-complaint against Shalant but that he did not act with malice. We conclude that the evidence was insufficient to compel a finding of malice.

The element of malice "relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494.)

Shalant emphasizes the jury's finding that Girardi lacked probable cause to bring the cross-complaint. But a finding of malice does not flow automatically from a finding of lack of probable cause. "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citations], but the lack of probable cause must be supplemented by other, additional evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

No evidence of malice appears in the record. Shalant did not, for example, produce evidence that Girardi acted out of hatred or ill will; that Girardi knew his claim against Shalant was invalid when he brought it; that Girardi brought the action solely to deprive Shalant of the beneficial use of his property; or that Girardi brought the action to force a settlement having no relation to the merits of the claim. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.)

Shalant argues that "Girardi should have testified directly to his subjective beliefs for suing Shalant . . . [y]et Girardi's lawyers elected not to call or examine Girardi." Girardi testified that he would not have entered into a fee splitting deal with Shalant if he had known Shalant's true status with the State Bar. In any event, the burden was on Shalant to prove malice, not on Girardi to prove nonmalice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.)

8

## III. THE COURT DID NOT ERR IN IMPOSING A TIME LIMIT ON SHALANT'S PRESENTATION OF EVIDENCE.

Shalant maintains that the court did not give him sufficient time to present his case. We disagree. Shalant presented his case for six court days including more than eight hours examining Girardi under Evidence Code section 776.

"It is incumbent upon trial judges to manage trials efficiently" including imposing reasonable time limits. (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 20.) The trial judge in this case acted well within his discretion by imposing time limits on Shalant's examinations of himself and Girardi after it became apparent to the court that Shalant was wasting time by asking long, drawn-out questions, not being prepared with the documents he wanted to show to the witness and reading lengthy documents to the jury.

In any event, Shalant fails to state with any specificity what relevant evidence he would have presented were it not for the court's time limits. Accordingly, we have no basis for reversing the judgment. (Evid. Code, § 354.)

## IV. THE COURT DID NOT PRECLUDE SHALANT FROM INTRODUCING IMPEACHMENT EVIDENCE THAT GIRARDI "PAID OFF" TWO NON-LAWYERS IN ANOTHER CASE.

Shalant contends that he sought to present evidence "of Girardi's having knowingly negotiated a forged $5,650,000 check and that he paid off two non-lawyers in the *Kalianotis v. Bank of America* case" but the court ruled that the evidence was irrelevant. The record does not support Shalant's claim.

The subject of the *Kalianotis* case arose during a pretrial conference to identify documents that the parties would seek to introduce at trial. The court told Shalant that the *Kalianotis* case "might be a discussion for later on. I'd like to see something in writing. I don't know a thing about [the matter]." The court did note, however, that "[i]t does seem to me it's not going to be very probative in this lawsuit." The court never made a definitive ruling on the matter because Shalant never offered the check or any evidence of the "pay off" at trial.

9

## V. THE COURT DID NOT ERR IN DENYING SHALANT'S MOTION TO COMPEL GIRARDI TO PRODUCE UNSPECIFIED DOCUMENTS AT TRIAL RELATING TO A CHECK.

Prior to trial Shalant served a demand on Girardi under Code of Civil Procedure section 1987 to produce 41 categories of documents at trial including: "Documentation showing that check #13819 for $60,000 was not negotiated (i.e. paid) to you or to Girardi/Keese. Check #13819 is listed in your All Accounts Case Card Register that you produced in discovery." In support of his demand for production Shalant argued: "This evidence relates to Girardi's refusal to provide Shalant with the requested accounting, and demonstrates his fraudulent practices. To avoid simply providing the requested accounting information, Girardi instead proactively maliciously sued plaintiff. This information is relevant and material."

Girardi objected to this demand and Shalant brought a motion to compel production. The court denied the motion on the grounds that the demand "most assuredly does not specify the exact materials to be produced" as required by Code of Civil Procedure section 1987 and, furthermore, "fails to show materiality to the issues." We agree.

A request to produce writings and other items at trial "shall state the exact materials or things desired and that the party or other person has them in his or her possession or under his or her control." (Code Civ. Proc., § 1987, subd. (c).) If the party to whom the request is made objects to producing the materials, the requesting party may obtain a court order compelling production upon "a showing of good cause and of materiality of the items to the issues[.]" (*Ibid.*)

10

Assuming that the documents Shalant sought would have been material to the issue of malice, the request fails because, as the court pointed out, Shalant did not state the "exact materials or things desired." A request for "documentation" relating to the check in question does not satisfy the statute. As a leading treatise on civil trials and evidence explains: "For *discovery* purposes, a party may compel document production by reasonably describing *a category* of documents (e.g., 'all correspondence between Jones and Smith relating to the XYZ transaction'). (Code Civ. Proc., § 2031.030[, subd.] (c)(1).) [¶] But to obtain production at trial, the description must be 'exact' (e.g., 'letter dated June 21, 1990, written by Harry A. Jones to Paula Smith, captioned "Re XYZ" and marked as Exhibit "A" in Smith's deposition'). . . . This prevents parties from using a 'notice to produce' for discovery purposes after discovery is closed." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2014) ¶¶ 1:115-1:115.1, p. 1-31.)

## VI. SHALANT'S REMAINING ARGUMENTS ARE NOT RELEVANT TO TO THE ISSUE OF MALICE.

Shalant alleges other errors including admitting evidence of his troubles with the State Bar, instructing the jury on the State Bar's rules concerning fee splitting and overruling his objections to opening statements and closing arguments by defense counsel. We do not discuss these alleged errors because our review of the record convinces us that none of them would have affected Shalant's ability to prove malice on the part of Girardi.

11

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded his costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

JOHNSON, J.

12