Filed 10/15/20 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVAUGHN LOVE,<br><br>    Defendant and Appellant. | B302892<br><br>(Los Angeles County<br>Super. Ct. No. TA138408)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 1, 2020, be modified as follows:

1.  On page 5, the first full paragraph at the top of the page beginning with "The trial court instructed the jury" is modified to add "attempted" in front of "murder" in points (2) and (3) as follows:

> The trial court instructed the jury that defendant could be held liable for attempted murder (1) if he aided and abetted Vaughn in committing the

attempted murder, (2) if he aided and abetted Vaughn in committing an "assault" and attempted murder was a natural and probable consequence of that assault, or (3) if he and Vaughn conspired to commit an assault and attempted murder was a foreseeable consequence of that conspiracy.

There is no change in the judgment.
Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P.J.,  CHAVEZ, J.,  HOFFSTADT, J.

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B302892 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA138408) |
| v. | |
| DAVAUGHN LOVE, | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Affirmed.

Kelly C. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

In 2018, Senate Bill 1437 amended the statutes defining the crime of murder to eliminate, in all but one context, liability for murder based on the so-called "natural and probable consequences theory." (Pen. Code, §§ 188, 189.)[1]  Under that theory, a defendant may be held liable for murder if (1) he aids and abets some lesser crime, (2) the person he aided and abetted commits a murder, and (3) murder was a natural and probable consequence of the lesser crime.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 262 (*Prettyman*), superseded in part by Sen. Bill No. 1437.)

But did Senate Bill 1437 also eliminate the natural and probable consequences theory of liability for *attempted murder*?

So far, the Courts of Appeal have split three ways on the question.  The first group has held that Senate Bill 1437 did not eliminate the natural and probable consequences theory for attempted murder at all—either prospectively or retroactively. (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1092-1093, review granted Nov. 13, 2019, S258175 (*Lopez*); *People v. Munoz* (2019) 39 Cal.App.5th 738, 754, review granted Nov. 26, 2019, S258234 (*Munoz*); *People v. Dennis* (2020) 47 Cal.App.5th 838, 841, review granted July 29, 2020, S262184; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222.)  The second group has held that Senate Bill 1437 eliminated the natural and probable consequences theory for attempted murder prospectively, but not retroactively. (*People v. Larios* (2019) 42 Cal.App.5th 956, 966, 969-970, review granted Feb. 26, 2020, S259983 (*Larios*); *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642, review granted June 10, 2020, S261768 (*Sanchez*).)  The last group has held that Senate Bill 1437

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

eliminated the natural and probable consequences theory for attempted murder prospectively and retroactively as to nonfinal convictions, but not retroactively as to final convictions. (*People v. Medrano* (2019) 42 Cal.App.5th 1001, 1008, 1017-1019, review granted Mar. 11, 2020, S259948 (*Medrano*).)

Our Supreme Court has granted review on this question, and will soon provide guidance. We nevertheless publish because our analysis of the issue differs enough from the rationales of the other decisions that it may provide an additional perspective for the Supreme Court to consider. Specifically, we hold that Senate Bill 1437 does not eliminate the natural and probable consequences theory for attempted murder on *any* basis—either prospectively or retroactively. In reaching this holding, we conclude that (1) Senate Bill 1437's inapplicability to the crime of attempted murder on a prospective basis is not clear from its text, but is clear from its legislative history and not contradicted by any of the other canons of statutory construction, and (2) even if Senate Bill 1437 applied prospectively to the crime of attempted murder, that application would not have any retroactive effect because the bill's statutory mechanism for providing retroactive relief—namely, section 1170.95—limits relief to "convictions" for "murder," which rebuts the usual presumption that ameliorative changes in the law apply retroactively to nonfinal convictions (*In re Estrada* (1965) 63 Cal.2d 740, 745-746 (*Estrada*)).

For these reasons, and because we reject a further challenge to the sentence at issue in this case in the unpublished portion of this opinion, we affirm the order denying relief under Senate Bill 1437 as well as the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[2]

In mid-August 2015, Davaughn Love (defendant) drove a fellow gang member (Antwoine Vaughn) into a rival gang's territory in the midst of a retaliation campaign against that rival gang. They enlisted a third gang member to follow them in a separate car and videotape their anticipated exploits. Once they arrived in the rival gang's territory, "[defendant] stopped the car, and Vaughn got out and approached a man standing on the sidewalk with a woman and two children. After exchanging a few words, Vaughn pulled out a gun and opened fire on the man's back. Vaughn continued 'shooting wildly' as the man tried to flee into a nearby intersection. All in all, 10 bullets hit the man (causing injuries to his head, chest, leg and hand), and three bullets struck a nearby car that was driving through the intersection. Vaughn got back into the car, and [defendant] drove away." The next day, defendant sent a text message to Vaughn, reminding him to "move" the gun.

### II.    Procedural Background

#### A.    *Initial trial court proceedings*

The People charged defendant with (1) the attempted murder of the man Vaughn shot 10 times (§§ 187, subd. (a), 664, subd. (a)), and (2) shooting at the occupied vehicle struck by another three bullets Vaughn shot (§ 246). The People further alleged that these crimes were committed "for the benefit of, at the direction of, or in association with" a criminal street gang

---

[2]    We draw these facts from our prior opinion. (*People v. Vaughn* (April 5, 2018, B277941) [nonpub. opn.].)

(§ 186.22, subd. (b)(4)), and that a principal had discharged a firearm and caused great bodily injury (§ 12022.53, subd. (d)).[3]

The trial court instructed the jury that defendant could be held liable for attempted murder (1) if he aided and abetted Vaughn in committing the attempted murder, (2) if he aided and abetted Vaughn in committing an "assault" and murder was a natural and probable consequence of that assault, or (3) if he and Vaughn conspired to commit an assault and murder was a foreseeable consequence of that conspiracy.

The jury convicted defendant of attempted murder and shooting at an occupied vehicle. The jury also found the gang and firearm allegations to be true.

The trial court sentenced defendant to state prison for life, with a minimum term of 47 years. For the attempted murder, the court sentenced defendant to life in prison with a minimum term of 32 years, with the minimum comprised of 7 years for the attempted murder itself plus an additional 25 years for the firearm enhancement. For shooting at an occupied vehicle, the court imposed a consecutive life term with a minimum term of 15 years.

## B.  *First appeal*

Defendant appealed his conviction and sentence. In an unpublished opinion issued on April 5, 2018, we affirmed defendant's conviction and sentence but remanded the matter so

---

[3]     The People also charged Vaughn with several crimes, and alleged that defendant had suffered two prior "strike" convictions under our Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)) and had served one prior prison term (§ 667.5, subd. (b)), but these further allegations are not germane to the issues on appeal.

that the trial court could determine whether to exercise its newly conferred discretion to strike the firearm enhancement.

Defendant petitioned for review before the Supreme Court, and the Supreme Court granted review and remanded the matter to us with directions to consider whether to apply the newly enacted Senate Bill 1437.

After entertaining further briefing on the applicability of Senate Bill 1437, we issued an unpublished opinion on May 30, 2019 that (1) affirmed defendant's convictions, (2) remanded the matter for the trial court to consider whether to strike the firearm enhancement, and (3) denied any relief pursuant to Senate Bill 1437 without prejudice to defendant filing a petition for relief with the trial court pursuant to the mechanism set forth in section 1170.95 for seeking relief under the bill.

### C.    *Proceedings on remand*

#### 1.    *Petition for relief under section 1170.95*

On September 18, 2019 and October 7, 2019, defendant filed two separate petitions seeking to vacate his attempted murder conviction on the basis of section 1170.95.

On October 22, 2019, the trial court denied his motions on the ground that section 1170.95 does not apply to convictions for attempted murder.

#### 2.    *Resentencing*

On October 24, 2019, defendant filed a motion asking the trial court to exercise its newly conferred discretion to strike the 25-year firearm enhancement on the attempted murder count. In that motion, defendant urged that "substantial evidence" supported a finding that he "intended only to aid and abet a physical assault, not a shooting," and that his lack of personal

6

intent to "kill anyone" warranted a 25-year reduction in his sentence.

The trial court held a hearing on November 20, 2019. After recounting the facts of the case, the court expressed its "confiden[ce]" that, "[b]ased on the totality of the evidence that was presented in this case," defendant "knew what was going on, that it wasn't just merely going to beat up" a rival gang member. The court reasoned: "You don't . . . bring a gun to go beat somebody up. When you're going into rival gang territory, you're armed, and [defendant] was integral to the shooting." Given defendant's "integral" role, the court declined to "exercise its discretion to strike the gun allegation."

D. *This appeal*

On November 20, 2019, defendant filed a notice of appeal from the order denying his petitions for relief under section 1170.95. On May 6, 2020, we issued an order construing that notice of appeal also to encompass the trial court's judgment that declined to strike the firearm enhancement.

## DISCUSSION

## I. Denial of Relief under Senate Bill 1437

Defendant argues that he is entitled to have his attempted murder conviction vacated because it possibly rests on a natural and probable consequences theory. Resolving this argument requires us to examine two questions: (1) Does Senate Bill 1437 prospectively apply to the crime of attempted murder, and thus bar a conviction that potentially rests on the natural and probable consequences theory, and, if so, (2) Does this prospective change in the law also apply retroactively to a conviction, like defendant's, that is not yet final? Both of these questions turn on questions of statutory interpretation and constitutional law, and

7

hence are questions we review de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95 [statutory interpretation]; *People v. Zamudio* (2008) 43 Cal.4th 327, 342 [constitutional interpretation].) For the reasons set forth below, we conclude that the answer to these two questions is "no."

## A. *Does Senate Bill 1437 preclude natural and probable consequences liability for attempted murder on a prospective basis?*

### 1. *As a matter of its plain language?*

When determining the meaning of a statute, the first—and potentially last—place to look is its plain language. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.)

As far as modifying the criminal law on a prospective basis, Senate Bill 1437 modified two statutes: Section 188 and section 189. Elaborating on the definition of murder as "the unlawful killing of a human being . . . with malice aforethought" (§ 187, subd. (a)), section 188 provides that "malice may be express or implied" (§ 188, subd. (a)). Senate Bill 1437 added subdivision (a)(3) to section 188, which now states:

> "Except as stated in [section 189, subdivision (e)], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

(§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Senate Bill 1437 also added subdivisions (e) and (f) to section 189. (Stats. 2018, ch. 1015, § 3.) As the above quoted text of section 188 indicates, section 189, subdivision (e) sets forth the exceptions—and there are three of them—to section 188's newly created "no imputation of malice" rule: (1) when the defendant "was the actual killer," (2) when the defendant, "with the intent to kill," "aided" and

8

"abetted" the actual killer, or (3) when the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).) And these three exceptions themselves have an exception: Imputation of malice is still permissible if "the [murder] victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known" that fact. (§ 189, subd. (f).)

Do these changes to the plain language of section 188 and 189 defining the crime of murder apply with equal force to the crime of *attempted* murder? We conclude that the text itself is unclear.

On the one hand, one can reasonably argue that the plain language of these amendments dictates their application to the crime of attempted murder. Section 188, subdivision (a)(3) plainly states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Thus, Senate Bill 1437 could be read as requiring that murder convictions rest on the personal intent *of the defendant*, and not on theories that hold a defendant "vicarious[ly] liab[le]" for the acts or intent of others. (*Larios*, *supra*, 42 Cal.App.5th at pp. 966-967.) Our Supreme Court has defined liability under a natural and probable consequences theory as having five elements—namely, that (1-3) the defendant aided and abetted the actual perpetrator of a predicate crime, and did so with knowledge of the perpetrator's unlawful purpose and with the intent to "commit[], encourag[e], or facilitate[]" that offense, (4) the actual perpetrator "committed an offense *other than* [the predicate offense]," and (5) "the offense committed by the [actual perpetrator] was a natural and probable consequence of the

9

[predicate] crime that . . . defendant aided and abetted."
(*Prettyman*, *supra*, 14 Cal.4th at p. 262.) The fifth element is
"judged objectively" by asking ""'"whether a reasonable person in
the defendant's position would have or should have known that
the charged offense was a reasonably foreseeable consequence of
the act aided and abetted."'"" (*People v. Chiu* (2014) 59 Cal.4th
155, 161-162 (*Chiu*), superseded in part by Sen. Bill No. 1437.)
Because a defendant's liability for the further crime under the
natural and probable consequences theory turns on whether that
further crime was "reasonably foreseeable" to a "reasonable
person," that liability does not turn on the personal intent of the
defendant or the actual perpetrator as to that further crime.[4]
(Accord, *Lopez*, 38 Cal.App.5th at pp. 1102-1103.) As such,
liability for that further crime under the natural and probable

_____

[4] The cases also seem to disagree over whether section 188's
prohibition against "imput[ing]" malice operates to foreclose
application of the natural and probable consequences theory.
Some cases say malice is "imputed" only when a theory imports
the actual perpetrator's subjective intent to the defendant (*Lopez*,
*supra*, 38 Cal.App.5th at p. 1106), while others say that Senate
Bill 1437's bar on imputation applies whenever liability is
vicarious, even if it does not entail transferring intent from one
actor to another (*Larios*, *supra*, 42 Cal.App.5th at p. 966;
*Medrano*, *supra*, 42 Cal.App.5th at pp. 1013-1014). To us, this
debate over the meaning of the word "impute" is unhelpful to
assessing whether Senate Bill 1437 applies to the crime of
attempted murder. That is because Senate Bill 1437's use of the
word "impute" indisputably bars the use of the natural and
probable consequences theory *as to murder*. Because the natural
and probable consequences theory functions the same for crimes
of murder and attempted murder, the use of the word "impute"
cannot be what justifies the application of Senate Bill 1437 to
murder but not attempted murder.

consequences theory is "vicarious in nature." (*Chiu*, at p. 164.)
Because the crime of attempted murder necessarily looks to—and
thus ostensibly borrows from—the elements of the crime of
(completed) murder (§ 21a), Senate Bill 1437's textually express
abrogation of vicarious liability for murder ostensibly applies to
attempted murder as well.

On the other hand, one can reasonably argue that the plain
language of Senate Bill 1437's amendments to sections 188 and
189 do *not* dictate their application to the crime of attempted
murder. If our Legislature's goal was to eliminate vicarious
liability for the crime of attempted murder, it picked a rather
circuitous way of doing so: Rather than amend the statutes
defining attempt (§ 21a) or aiding and abetting liability (§ 31),
Senate Bill 1437 modified the definition of the crime of "murder"
by adding a "no imputation" rule for murder that should
nevertheless be read to apply to all other crimes premised on an
imputation of malice. As between a construction of Section Bill
1437's amendments that requires multiple steps and inferences—
and a more straightforward construction that Senate Bill 1437
amended the crime of murder alone and thus applies to murder
alone—the simplest construction is often the more reasonable
one: "'[T]he principle of Occam's razor—that the simplest of
competing theories should be preferred over more complex and
subtle ones—is as valid juridically as it is scientifically.'
[Citation.]." (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40
Cal.4th 1313, 1328, fn. 10.) Indeed, courts have uniformly
declined to read Senate Bill 1437's "no imputation of malice" rule
to apply to voluntary manslaughter, even though that crime—
like murder—requires proof of malice (although, for voluntary
manslaughter, that malice is deemed, as a legal matter, to be

11

negated due to heat of passion or imperfect self-defense).  (*People v. Turner* (2020) 45 Cal.App.5th 428, 438; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 916, 921; *People v. Paige* (2020) 51 Cal.App.5th 194, 201; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 888-889; see also *People  v. Rios* (2000) 23 Cal.4th 450, 460 [intentional killing becomes voluntary manslaughter because heat of passion is deemed to negate malice]; *In re Christian S.* (1994) 7 Cal.4th 768, 773 [intentional killing becomes voluntary manslaughter because imperfect self-defense is deemed to negate malice].)  Notably, Senate Bill 1437 itself does not erect an across-the-board "no imputation of malice" rule because it excepts crimes where the victim is known or reasonably suspected to be a peace officer.  (§ 189, subd. (f).)  What is more, the crime of attempt does not incorporate all elements of the complete crime lock, stock and barrel:  To the contrary, attempt requires only a specific intent to commit the complete crime and the taking of """a direct but ineffectual act toward accomplishing""" the intended crime.  (*People v. Perez* (2010) 50 Cal.4th 222, 229.)  Based on these arguments, Senate Bill 1437's amendment to the murder statute would not inevitably affect the crime of attempted murder.

The ambiguity in Senate Bill 1437's plain language is epitomized by the very split of authority on this issue:  Some cases say that Senate Bill 1437 does not reach attempted murder because our Legislature did not expressly *include* the crime (e.g., *Lopez, supra,* 38 Cal.App.5th at p. 1104), while other cases say that Senate Bill 1437 reaches attempted murder because our Legislature did not expressly *exclude* it (e.g., *Medrano, supra,* 42 Cal.App.5th at p. 1015).

12

2.      *As a matter of legislative history?*

Where, as here, the plain language of a statute is ambiguous, courts look next to the statute's legislative history for clues as to the statute's purpose.  (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 189.)

In our view, Senate Bill 1437's legislative history pretty clearly establishes that its amendments apply to the crime of murder and to that crime alone.  The best evidence of this is in the preamble to Senate Bill 1437 itself, which declares our Legislature's finding that "[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*, to ensure that *murder liability* is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added.)  That preamble also declares that "[e]xcept as stated in subdivision (e) of Section 189 . . . , a conviction *for murder* requires that a person act with malice aforethought.  A person's culpability *for murder* must be premised on that person's own actions and subjective mens rea." (*Id.*, § 1, subd. (g), italics added.)  These statements of purpose leave little doubt that our Legislature was focused on eliminating vicarious liability for the crime of murder, and not lesser crimes.  (Accord, *Lopez, supra*, 38 Cal.App.5th at p. 1104 [so noting]; *Munoz, supra*, 39 Cal.App.5th at p. 757 [same].)

This more modest focus is buttressed by various reports presented to our Legislature in the course of its consideration of what became Senate Bill 1437.  A June 26, 2018 Report from the Assembly Committee on Public Safety summarized the bill as "limit[ing] liability for individuals *based on a theory of 1st or 2nd*

13

*degree felony murder.*" (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1, italics added.)  An April 23, 2018 Report of the Senate Committee on Public Safety also discussed the bill in terms of its effect on first and second degree murder convictions.  (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced on February 16, 2018, pp. 5-7.)  And a May 14, 2018 Report from the Senate Committee on Appropriations noted that the bill "would . . . [p]rohibit a participant or conspirator in the perpetration or attempted perpetration of one of the specified first-degree murder felonies *in which a death occurs from being liable for murder*" absent personal culpability, and went on to analyze the cost—to the courts—of revisiting convictions for first and second degree murder; the Report said nothing at all about attempted murder.  (Sen. Com. on Appropriations, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced on Feb. 16, 2018, italics added.)

    3. *Under the canons of statutory construction?*

   Where the statutory language is ambiguous, courts may also employ the "interpretative canons" that can function as a sixth sense-type "guide" in our inquiry into legislative intent. (*People v. Valencia* (2017) 3 Cal.5th 347, 381.)  Two of those canons are potentially relevant here.

    a. *Under the canon of constitutional avoidance?*

   The canon of constitutional avoidance requires "'courts, when faced with two plausible constructions of a statute—one constitutional and the other unconstitutional—to choose the constitutional reading.'" (*Voisine v. United States* (2016) 136 S.Ct. 2272, 2290.)  Does Senate Bill 1437—by eliminating natural and probable consequences liability for murder but not attempted

murder—deny otherwise eligible defendants the constitutional guarantee of equal protection of the law, and thus require us to construe Senate Bill 1437 to reach attempted murder? We conclude the answer is "no."

The right to equal protection of the law is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*); *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568.) What constitutes sufficient justification varies. If the law treats people differently on the basis of their membership in certain "suspect classes" (such as their race) or if the differential treatment "affect[s] a fundamental right," then the government must satisfy the strictest scrutiny by demonstrating that the differential treatment is necessary to serve a compelling interest. (*Chatman*, at p. 288.) If the law treats people differently on the basis of their membership in other "suspect classes" (such as gender or illegitimacy), then the government must satisfy a more intermediate scrutiny. (*Ibid.*) In all other situations, differential treatment of similarly situated groups will be upheld unless the challenger shows "there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) This so-called "rational basis" scrutiny is exceedingly deferential: A law will be upheld as long as a court can "speculate" any rational reason for the resulting differential treatment, regardless of whether the "speculation has 'a foundation in the record,'" regardless of whether it can be "empirically substantiated," and regardless of whether the legislature ever "articulated" that reason when enacting the law. (*Id.* at pp. 74-75; *Johnson v. Department of Justice* (2015) 60

15

Cal.4th 871, 881.) A court may not "second-guess" the "'wisdom, fairness, or logic'" of the law, and may invalidate it only if the challenger "'negative[s] every conceivable basis'" for the differential treatment. (*Heller v. Doe* (1993) 509 U.S. 312, 319-320.)

Even if we assume for the sake of argument that persons convicted of murder and persons convicted of attempted murder are similarly situated (but see *Lopez, supra*, 38 Cal.App.5th at p. 1109), construing Senate Bill 1437 to reach murder but not attempted murder does not violate equal protection.

To begin, Senate Bill 1437 need only survive rational basis scrutiny. Treating people differently based on their crime of conviction is not a classification based upon "suspect class." Nor is it a classification that affects a fundamental right because defendants have no fundamental right or liberty interest "'in a specific term of imprisonment or in the designation a particular crime receives.'" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*).) We are mindful that our Supreme Court's decision in *People v. Olivas* (1976) 17 Cal.3d 236, 239 suggested that strict scrutiny may apply to differential treatment arising out of the classification of crimes, but the Court's subsequent decision in *Wilkinson* clipped *Olivas'*s wings when it rejected the proposition that "*Olivas* . . . require[s] the courts to subject all criminal classifications to strict scrutiny." (*Wilkinson*, at p. 838; accord, *People v. K.P.* (2018) 30 Cal.App.5th 331, 343.)

What is more, the line that Senate Bill 1437 draws between persons convicted of murder and persons convicted of attempted murder is a rational one. In fact, we can divine two rational reasons why our Legislature would eliminate natural and probable consequences liability for murder but not for attempted

16

murder.  First, one of Senate Bill 1437's stated purposes is to make a person's prison sentence "commensurate with the culpability of the individual."  (Stats. 2018, ch. 1015, § 1, subd. (e).)  When a person is held liable for a crime on the basis of the natural and probable consequences theory, the gap between his individual culpability and the resulting sentence is greater for murder than it is for attempted murder because the base sentence for murder (which is 15 years to life for second degree murder and 25 years to life for first degree murder (§ 190, subd. (a))) is greater than the base sentence for attempted murder (which is five, seven or nine years if not premeditated, and life if premediated (§ 664, subd. (a))).  Thus, the Legislature may have wanted to focus on the crime—that is, murder—for which the gap was most pronounced.  (Accord, *Lopez*, *supra*, 38 Cal.App.5th at p. 1112; *Munoz*, *supra*, 39 Cal.App.5th at pp. 763-764.)  Second, our Legislature examined the cost of eliminating natural and probable consequences liability on a retroactive basis.  (Sen. Com. on Appropriations, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.)  The *cost* of re-opening and adjudicating convictions will be greater if the universe of convictions to be re-opened includes attempted murder *and* murder, instead of just murder.  Thus, the Legislature may have wanted to keep costs down by focusing just on murder convictions resting on the natural and probable consequences theory.  (Accord, *Lopez*, at p. 1112; *Munoz*, at pp. 763-764; *People v. Sanchez*, *supra*, 48 Cal.App.5th at p. 921.)  A legislature acts rationally when it takes a """one step at a time""" approach that focuses first on """striking the evil where it is felt most."""  (*Warden v. State Bar* (1999) 21 Cal.4th 628, 649; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 261 ["A statute is not invalid merely because it

17

may fall short of accomplishing all that its drafters intended."].) A legislature's commitment to a cause is rational even if it is not a diehard commitment. Indeed, if there was nothing irrational about our Supreme Court's decision in *Chiu, supra*, 59 Cal.4th 155, to eliminate natural and probable consequences for first degree murder while leaving that theory intact for second degree murder (*id.* at p. 166), it is difficult to see how Senate Bill 1437's elimination of that liability for second degree murder while leaving that theory intact for attempted murder and manslaughter is any less rational.

Defendant urges that *People v. Edwards* (2019) 34 Cal.App.5th 183 (*Edwards*) dictates a finding that Senate Bill 1437 is irrational. It does not. The issue in *Edwards* was whether the Legislature had a rational basis for granting an opportunity for parole after 15, 20 or 25 years to youthful offenders (that is, those between the ages of 18 and 25) who committed first degree murder, but not to youthful offenders who committed violent sex crimes under our One Strike Law (§ 667.61). (*Edwards*, at p. 186.) *Edwards* held that there was no rational reason for the Legislature to subject youthful offenders convicted of violent sex crimes to "categorially harsher punishment" than youthful offenders convicted of first degree murder in light of precedent recognizing that "there is no crime as horrible as intentional first degree murder." (*Id.* at pp. 196-197, 199.) Unlike the law at issue in *Edwards*, Senate Bill 1437 *has* a rational reason for eliminating vicarious liability for murder but not attempted murder—namely, and as discussed above, that it was focusing on the liability for the crime (that is, murder) where there was the greatest gap between the defendant's personal culpability and the sentence.

18

b.    *Under the canon against absurd consequences?*

When the "literal meaning" of a statute will lead to "absurd results" that "the Legislature could not have intended," courts may construe the statute to avoid those results.  (*In re D.B.* (2014) 58 Cal.4th 941, 948; *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 9.)  Does construing Senate Bill 1437 to encompass murder but not attempted murder lead to absurd results?  We conclude that answer is "no."

The argument that Senate Bill 1437 leads to absurd results starts with the bill's new rule:  A person may be convicted of attempted murder on natural and probable consequences theory but a person may no longer be convicted of murder on that theory.  This, in turn, means that persons convicted of murder on this theory will inevitably end up with lesser overall sentences than those convicted of attempted murder on this theory.  And this, in turn, will "incentiviz[e] murder" (ostensibly, over attempted murder) because the sentence for murder on this theory will invariably be *less* than the sentence for attempted murder on this theory.  (*Sanchez, supra*, 46 Cal.App.5th at p. 642.)

We reject this argument.  Although this argument correctly summarizes Senate Bill 1437's rule, it incorrectly extrapolates the consequences of that rule.  To begin, there is no guarantee that persons convicted of attempted murder on a natural and probable consequences theory will end up with a higher sentence than those who might have been charged with (and convicted of) murder on a natural and probable consequences theory.  The sentence for attempted murder is relatively low—five, seven or nine years, if the attempted murder is not premeditated.  (§ 664,

19

subd. (a).)  And the sentence for those persons who might have been charged with (and convicted of) murder on a natural and probable consequences theory may well be higher because those persons, by definition, aided and abetted some other crime (the natural and probable consequence of which would have been murder under the pre-Senate Bill 1437 law).  The likelihood that these individuals would end up with a higher sentence than those convicted of attempted murder under a natural and probable consequence theory is even greater when one considers that gang, firearm and recidivist enhancements may further increase that sentence.

But even if we assume for the sake of argument that persons convicted of attempted murder under a natural and probable consequences theory inevitably end up with a higher sentence than those who might have been charged with (and convicted of) murder under a natural and probable consequences theory, this result will not incentivize murder.  As a factual matter, people do not plan to commit an *attempted* murder.  They plan to commit murder, but end up being unsuccessful.  Indeed, a person can be convicted of attempted murder only if he or she intends to kill.  (*People v. Smith* (2005) 37 Cal.4th 733, 739 ["to be convicted of . . . attempted murder, the prosecution had to prove [the defendant] acted with [the] specific intent to kill that victim"].)  It is difficult to see how a difference in sentencing on the back end has any effect on a crime that, by definition, the perpetrator must intend to commit.  The incentive argument is also, in our view, logically flawed.  The only two persons who might be incentivized to commit murder are the actual perpetrator and the defendant who ends up being on the hook by virtue of the natural and probable consequences theory.  But the

20

actual perpetrator cannot be further incentivized to commit murder because he is already acting with the intent to kill. And the defendant who is held liable on a natural and probable consequences theory alone is liable under that theory because *a reasonable person* would think murder is a natural and probable consequence of the lesser crime he aided and abetted, and not because *that defendant* actually encouraged or influenced the actual perpetrator to commit a murder (because, if he had, he would be liable as a direct aider and abettor to the failed murder attempt). Thus, the possible difference in sentences will not incentivize either party to act any differently.

\*       \*       \*

Because our Legislature's intent to apply Senate Bill 1437 only to the crime of murder is clear from the bill's legislative history and not contradicted by any of the other pertinent canons of statutory construction, we agree with those cases holding that Senate Bill 1437 does not preclude natural and probable consequences liability for attempted murder on a prospective basis.

**B.      *Even if we assume that Senate Bill 1437 prospectively precludes liability for attempted murder, would that preclusion apply retroactively to a nonfinal conviction?***

The general default rule is that a new criminal law applies on a solely prospective basis "unless" the law "expressly" "declare[s]" it applies retroactively. (§ 3; *People v. Brown* (2012) 54 Cal.4th 314, 319 [noting this "default" rule].) There is an exception to this general default rule: When the new law "mitigates punishment," courts will presume that our Legislature intended it to apply to convictions that are not yet final—that is, to convictions for which the time to appeal and file a petition for a

21

writ of certiorari have not yet expired.  (*Estrada*, *supra*, 63 Cal.2d at pp. 745-746, 748; *People v. Smith* (2015) 234 Cal.App.4th 1460, 1464-1465.)  But this presumption applies only where "it is impossible to ascertain the legislative intent" regarding retroactivity (*Estrada*, at p. 746); where our Legislature expresses an intent *not* to have the new law apply retroactively, that express intent controls.  (*Ibid.*)

Even if Senate Bill 1437 prospectively eliminated natural and probable consequences liability for attempted murder, our Legislature has expressed an intent not to have that law apply retroactively to any prior convictions, whether or not final.  In addition to amending sections 188 and 189, Senate Bill 1437 added section 1170.95 as the mechanism by which previously convicted defendants may seek to vacate their convictions.  More specifically, section 1170.95 creates the procedure by which "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court . . . to have the petitioner's *murder conviction* vacated and to be resentenced on any remaining counts . . . ."  (§ 1170.95, subd. (a), italics added.)  In spelling out that procedure, section 1170.95 entitles a petitioner for whom an order to show cause has been issued to "a hearing to determine whether to vacate *the murder conviction . . . .*"  (*Id.*, subd. (d), italics added.)  As this italicized language makes clear, this mechanism for retroactive relief applies only to persons seeking to vacate a conviction for "murder"; it says nothing about attempted murder.  (Accord, *Larios*, *supra*, 42 Cal.App.5th at pp. 969-970; *Medrano*, *supra*, 42 Cal.App.5th at pp. 1017-1018.)  What is more, this mechanism applies to any "conviction[]" without regard to whether it is final or not.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 727

22

["section 1170.95 does not distinguish between persons whose sentences are final and those whose sentences are not."].) For this reason, we disagree with *Medrano*'s holding that section 1170.95 applies only to final convictions and thus does not rebut the default presumption favoring retroactive application of mitigating laws to nonfinal convictions. (*Medrano*, at pp. 1018-1019.) To us, section 1170.95's express application to all "conviction[s]"—whether or not final—rebuts this default presumption as to nonfinal as well as final convictions.

* * *

Thus, even if Senate Bill 1437 reached attempted murder convictions on a prospective basis, it does not provide for retroactive relief for such convictions whether final or not.

## II. Denial of Motion to Strike Firearm Enhancement

Defendant argues that the trial court erred in denying his motion to strike the 25-year firearm enhancement. In 2018, our Legislature granted trial courts discretion to "strike or dismiss" the 25-year enhancement for a principal's "intentional[] discharge[ of] a firearm" that "proximately causes great bodily injury, . . . or death." (§ 12022.53, subds. (d), (e) & (h).) We review a trial court's decision not to "strike or dismiss" an enhancement solely for an abuse of discretion (e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 378), and review any subsidiary factual questions for substantial evidence (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478-1479).

The trial court did not abuse its discretion in opting not to strike defendant's firearm enhancement. The court was aware of its discretion, and declined to exercise it based on its finding that defendant was "integral" to the shooting because he "knew" Vaughn was planning to shoot someone and nevertheless drove

23

Vaughn into rival gang territory and patiently waited while Vaughn opened fire in a busy intersection, shooting the victim 10 times as well as striking passing cars. These are entirely proper considerations. (E.g., *People v. Rocha* (2019) 32 Cal.App.5th 352, 359 [looking to "individualized considerations pertaining to the defendant and his or her offenses and background"].)

Defendant makes three arguments. First, he argues that the trial court misapprehended the underlying facts when it found that defendant knew about the shooting in advance because one of the trial witnesses testified that defendant had only planned a "beat down," not a shooting. Because the record contains substantial evidence to support the trial court's finding that defendant knew about the shooting, we necessarily decline defendant's invitation to come to a different finding after re-weighing the evidence. (*People v. Brown* (2014) 59 Cal.4th 86, 106.) Second, defendant argues that the trial court erred in discussing the video that Vaughn recorded showing Vaughn commit acts similar to those of the charged crimes. At worst, the video was irrelevant to defendant's role in the charged crimes, but it in no way undercut the trial court's otherwise accurate assessment of that role as being "integral." Lastly, defendant argues the court did not recite on the record all of the mitigating factors (such as defendant's age) or that it had reviewed the probation report(s). This is not required, as the trial court is presumed to have considered all the pertinent factors unless the record shows to the contrary (and here it did not). (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117; Cal. Rules of Court, rule 4.409.)

## DISPOSITION

The judgment and order denying relief under section 1170.95 are affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

25