Filed 2/29/24  S.F. Federal Credit Union v. S.F. Municipal Transportation Auth. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN FRANCSICO FEDERAL CREDIT UNION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SAN FRANCISCO MUNICIPAL TRANSPORTATION AUTHORITY,<br><br>    Defendant and Respondent. | A164463<br><br>(San Francisco City & County<br>  Super. Ct. No. CGC-18-565325) |

Plaintiff San Francisco Federal Credit Union (SFFCU) appeals from a jury verdict in favor of defendant San Francisco Municipal Transportation Authority (SFMTA), rejecting SFFCU's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  On appeal, SFFCU asserts various instructional and evidentiary errors.  SFFCU further challenges the trial court's denial of its motion for judgment notwithstanding the verdict and new trial.  We affirm the judgment.

BACKGROUND

**I. Factual Background**

In 1978, voters passed Proposition K, which provided free, non-transferrable taxi medallions distributed pursuant to a waitlist.  Due to various problems with the medallion program, including an almost 15-year

waitlist, SFMTA created a new class of taxi medallions. This new class created transferrable taxi medallions, which were available for a $250,000 purchase price.

SFFUC became one of two qualified lenders with SFMTA to finance the purchase of new medallions. The parties entered into an initial lender agreement in 2010, and a second similar lender agreement in 2013.

Section 4, subdivision (a) of the 2013 lender agreement provides that SFMTA "shall not set the Medallion Transfer Price for the Transfer of a Medallion below the highest Medallion Transfer Price paid by a Medallion Holder to whom any Qualified Lender made a loan that is still outstanding to finance the transfer of a Medallion." In the event of foreclosure, Section 5, subdivision (c) provides "SFMTA and Lender shall use diligent and good faith efforts to re-transfer each foreclosed Medallion as soon as reasonably possible, which efforts shall include, but need not be limited to, ensuring that Foreclosed Medallions are re-transferred prior to authorizing the issuance of transfer or re-transfer of new Medallions." In the event SFMTA were to terminate transferability of some or all medallions, Section 6, subdivision (a) provides that SFMTA would, "at the request of the Medallion Holder," repurchase "at the Medallion Transfer Price paid" by the medallion holder "a Transferable Medallion that is no longer transferable or assignable."

In connection with the 2013 lender agreement, SFFCU executed a "Lender's Acknowledgements and Warranties" stating SFMTA "has made no representations or warranties to Lender with regard to the value or profitability of Medallions, the continued demand for Medallions, or the SFMTA's ability to Retransfer a Transferrable Medallion . . . ."

Between 2010 and 2013, transportation network companies, such as Uber and Lyft, began operating in San Francisco. These companies

negatively impacted the profitability and demand for taxi medallions. The value of taxi medallions fell below the set sales price of $250,000, and no sales occurred after April 2016.

In May 2016, SFFCU began foreclosing on taxi drivers who had loan agreements with SFFCU to finance the purchase of their medallions. At the time of trial, SFFCU had foreclosed on approximately 285 medallions.

## II. Procedural Background

SFFCU filed a first amended complaint against SFMTA alleging breach of contract and breach of the covenant of good faith and fair dealing.[1]

Prior to trial, the court asked SFFCU to provide a list of its theories of breach to guide "preliminary instructions and to be able to rule on evidence objections at trial." SFFCU provided a four-page list containing 16 theories of breach of contract and 10 theories of breach of the covenant of good faith and fair dealing. Because of the length of SFFCU's list, the court stated it would provide "a simple instruction on breach of contract and a simple instruction on the covenant of good faith and fair dealing." The court further clarified it did "not intend to specify the breaches that are claimed. That will be, I think, the obligation if any lawyer wishes to address it themselves."

The parties also submitted numerous motions in limine, including one regarding SFMTA's police powers. The court denied SFMTA's police powers motion. The court explained it needed to "hear evidence" and would defer the

---

[1] The complaint also alleged causes of action for breach of fiduciary duty, negligent misrepresentation, promissory estoppel, and breach of mandatory duty. Prior to trial, the court sustained SFMTA's demurrer without leave to amend on the breach of fiduciary duty, negligent misrepresentation, and promissory estoppel claims, and granted summary adjudication as to the breach of mandatory duty claim.

issue "until I see what the jury's verdict is," but noted "it's an incredibly significant issue in the case."

At trial, SFFCU relied on a legal memorandum drafted for the SFMTA, which stated "if the market price of the Medallions falls precipitously, i.e., no one is willing to buy for the price paid previously in a deal that a Qualified Lender loaned on, SFMTA will end up making up the gap." SFFCU elicited testimony that this memorandum was the "basis for" Section 6, subdivision (a), of the lender agreement and required SFMTA to terminate the medallion transfer program and pay SFFCU for outstanding medallions once there was no longer any meaningful medallion market. In response, SFMTA argued Section 6, subdivision (a), was in fact negotiated to protect SFFCU against regulatory decisions by SFMTA to eliminate the transferable nature of the medallions.

The jury returned a verdict in favor of SFMTA, rejecting all of SFFCU's breach of contract and breach of the implied covenant theories. The trial court entered judgment in favor of SFMTA, and SFFCU timely appealed.

## DISCUSSION

On appeal, SFFCU asserts (1) the jury instructions and special verdict form contained misstatements of law, (2) the trial court erred in excluding Exhibit 613, and (3) the trial court erred in denying its motion for judgment notwithstanding the verdict and new trial. We address each argument in turn.

### I. Instructional and Special Verdict Form Errors

SFFCU contends both CACI 325 and the special verdict form contained misstatements of law regarding the elements of the breach of the implied covenant claim. SFFCU also asserts the trial court erred in giving Special

4

Instruction No. 397 because it created confusion regarding whether SFMTA acted unfairly and without good faith.

"Instructional error is subject to a de novo standard of review." (*Suffolk Constr. Co., Inc. v. Los Angeles Unified Sch. Dist.* (2023) 90 Cal.App.5th 849, 869 (*Suffolk*); accord *Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 751 [" 'We analyze the special verdict form de novo.' "].) "However, the giving of an erroneous jury instruction should not be disturbed unless, ' "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." ' [Citation.] Instructional error is prejudicial in a civil case where ' " 'it seems probable' that the error 'prejudicially affected the verdict.' " ' " (*Suffolk,* at p. 870.)

### A. Relevant Factual Background

The trial court circulated proposed draft preliminary jury instructions and asked counsel to provide "any requested changes." This draft contained an unmodified version of CACI 325, which stated in relevant part, "To establish this claim, SFFCU must prove all of the following: . . . 3. That, by doing [s]o, SFMTA did not act fairly and in good faith." In response, SFFCU informed the court "[w]e think that the opening instructions you have provided are correct and that no additional instructions . . . are required." SFMTA proposed various substantive edits not relevant to the issues in this appeal.

After input from the parties, the court circulated a second draft of the preliminary instructions, identifying various changes, additions, and deletions. This draft again contained the same version of CACI 325. The court again requested the parties inform it of any requested edits. While

SFFCU proposed revisions to CACI 101 and 338 and proposed the addition of CACI 456, it did not raise any concerns regarding CACI 325.

The court then circulated a third and final version of the preliminary instructions, which included some minor edits and the deletion of CACI 338. The court noted "I am persuaded by the parties' emails that there is considerable uncertainty about what the jury will be asked to decide . . . . With that in mind, I have simply identified the parties' principal contentions and provided no law." The final version contained the same version of CACI 325, and the jury was subsequently instructed with CACI 325.

Following the commencement of trial, the trial court circulated an initial draft of the verdict form. Two questions asked whether SFMTA acted "unfairly and without good faith" by engaging in certain conduct. No questions used the phrase "unfairly or without good faith." The court also circulated "the applicable standard instructions and the still pertinent instructions from the preliminary set." This set continued to contain the same version of CACI 325 as included in the preliminary set.

SFFCU subsequently circulated its proposed verdict form. Six questions utilized the phrase "unfairly and without good faith" when discussing SFMTA's conduct. Only Question 21 used the phrase "unfairly or without good cause" when referencing SFMTA's conduct. However, Questions 22 and 23, which related to Question 21, returned to the phrase "unfairly and without good faith."

Following an informal conference to address the jury instructions and verdict form, SFFCU circulated a revised verdict form "which should hopefully track the changes we all worked through this evening." This draft again used the phrase "unfairly and without good faith." No question utilized the phrase "unfairly or without good faith." A later version circulated by

6

SFFCU used the phrase "unfairly and without good faith," and did not include the phrase "unfairly or without good faith." And, again, a final version circulated by SFFCU only utilized the phrase "unfairly and without good faith."

The trial court subsequently circulated "a near-final set of instructions." This set included the same version of CACI 325 as in prior drafts. SFFCU circulated proposed edits to CACI 325, but did not alter the "unfairly and without good faith" language.

During this review, SFMTA proposed two additional special instructions, one of which addressed its police powers defense. That proposed instruction stated, "You may not find that any of SFMTA's regulation or failure to regulate in the following areas is a breach of the contract or the covenant of good faith and fair dealing," followed by thirteen categories.

The court stated it would give the police powers special instruction in revised form. The court explained, "I will state in substance that the jury may not consider these actions as to the breach of contract claims but may consider them as to the implied covenant claims on the issues of fairness and good faith." The court then offered the parties an opportunity to make any remaining objections on the record before it circulated the final jury instructions. SFFCU only objected to the exclusion of CACI 456 and the inclusion of the special police powers instruction. It did not object to CACI 325.

The trial court circulated a final version of the jury instructions. In connection with the police powers instruction, SFFCU requested "the Court consider a small clarification . . . to make clear that the areas in the bullet point list in the new special instruction are not the only areas the jury is permitted to consider in deciding the convent claims. We propose simply

adding 'but not limited to these areas' in the second sentence." The court adopted this revision over SFMTA's objections.

## B. CACI 325

SFFCU first asserts CACI 325 erroneously instructed the jury that they could only find a breach of the covenant of good faith and fair dealing if SFMTA had acted *subjectively* unfairly and without good faith. SFFCU contends a breach of the covenant does not require subjective belief and instead may be found based on *objectively* unreasonable conduct. In response, SFMTA asserts SFFCU's position is barred by the doctrine of waiver and/or invited error. We agree SFFCU's challenge is barred.

" ' " 'In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.' [Citations.]" [Citation.] Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken.' '. . . Where . . . "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed.*" ' " (*Metcalf v. Cnty. of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131.) "Plaintiff's failure to request any different instructions means he may not argue on appeal the trial court should have instructed differently." (*Id.* at p. 1131.)

SFFCU has not identified any evidence in the record indicating it objected to the phrase "unfairly and without good faith" in CACI 325. SFFCU's argument to the contrary hinges on one iteration of the special verdict form—not CACI 325—that used the phrase "unfairly or without good cause." Not only did SFFCU fail to object to CACI 325, but it proactively

informed the court that the preliminary instructions, including CACI 325, "are correct." Following the presentation of evidence, the court again asked SFFCU to identify any objections to the final instructions, and SFFCU again did not object to CACI 325.

Apart from failing to object, SFFCU also proactively relied on CACI 325. In its closing statement, SFFCU informed the jury CACI 325 "should be your guidepost as you go through the covenant claim."

We find SFFCU's conduct analogous to the plaintiff's conduct in *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984 (*Transport*). In that case, the trial court conducted an extensive jury instruction conference, after which the plaintiff expressly agreed to the content of a jury instruction on the statute of limitations but later attempted to challenge the instruction as allegedly misstating the law. The Court of Appeal rejected this argument and held that claim of instructional error was barred by the invited error doctrine. (*Id.* at pp. 999–1006; accord *Scott v. C.R. Bard, Inc.* (2014) 231 Cal.App.4th 763, 787 [where the appellants acquiesced in an inadequate jury instruction on the medical standard of care, they were estopped from asserting the instructional error on appeal; otherwise, they could employ the " 'win-win' " gamesmanship of "wait and see what the jury did," and if the result was not to their liking, argue on appeal the jury was not properly instructed].) Here, as in *Transport*, SFFCU expressly approved the instructions, including CACI 325, and directed the jury to utilize it in their deliberations.

SFFCU relies on *Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 7 (*Lund*), to assert that legally incorrect jury instruction errors cannot be waived. While true, SFFCU has not demonstrated CACI 325 is legally incorrect. In *Carma Developers, Inc. v. Marathon Development*

9

*California, Inc.* (1992) 2 Cal.4th 342 (*Carma*), the California Supreme Court noted the challenge of "defining what is required by [the covenant of good faith and fair dealing]," explaining "[i]t has also been suggested the covenant is not susceptible to firm definition but" courts should "concentrate on what is prohibited." (*Id.* at p. 372.) "Notwithstanding the difficulty in devising a rule of all-encompassing generality," the court recognized the covenant "can be breached for objectively unreasonable conduct, regardless of the actor's motive." (*Id.* at p. 373.)

CACI 325 adequately tracks these concepts. First, CACI 325 instructs drafters to identify the allegedly prohibited conduct—i.e., "specify conduct that plaintiff claims prevented plaintiff from receiving the benefits under the contract." (CACI 325.) Next, CACI 325 states "[name of defendant] did not act fairly and in good faith" by engaging in such conduct. (CACI 325.) While this provision of CACI 325 does not distinguish between whether the failure to act fairly and in good faith was based on a subjective lack of belief in the validity of its act or objectively unreasonable actions, it also does not require a juror to rely exclusively on subjective evidence. Nothing in the instruction precludes a plaintiff from arguing that a defendant's failure to act fairly and in good faith was the result of objectively unreasonable conduct.[2]

At most, SFFCU's challenge to CACI 325 involves clarity—i.e., the instruction did not specify the way a breach may be established (subjective lack of belief or objectively unreasonable conduct). (See *Moore v. Wells Fargo*

_____

[2] As to the fourth element of CACI 325, SFFCU argues the jury was "never properly instructed" on SFMTA's failure to formally declare an end to the medallion sales program when SFMTA "exclusively controlled the market and all aspects of the Program." But SFFCU does not identify what instruction should have been given to address this alleged omission or indicate it requested such an instruction.

*Bank, N.A.* (2019) 39 Cal.App.5th 280, 290–291.) This argument required SFFCU to object at trial. SFFCU failed to do so, and it may not now challenge CACI 325 on appeal.

### C. Special Verdict Form

The parties next raise similar arguments regarding the special verdict form's use of the phrase "unfairly and without good faith." We conclude SFFCU also has failed to preserve this issue.

An appellant "must object to or otherwise challenge [a] special verdict form in the trial court to allege error on appeal." (*Fuller-Austin Insulation Co. v. Highlands Ins. Co.* (2006) 135 Cal.App.4th 958, 1005; see also *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530 ["A party who fails to object to a special verdict form ordinarily waives any objection to the form."].) "The risk of error falls solely on the plaintiff because it is the plaintiff, as the party with the burden of proof, who has the 'responsibility for submitting a verdict form sufficient to support her causes of action.'" (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 545.)

Here, SFFCU fails to identify any objection they raised in the trial court to the phrase "unfairly and without good faith." SFFCU's entire argument hinges on one iteration of the special verdict form that used the phrase "unfairly or without good cause" in one question. However, the record demonstrates (1) that same draft also used the phrase "unfairly and without good faith" in multiple other questions, (2) none of SFFCU's correspondence to the court on the special verdict forms advocated for the phrase "unfairly or without good cause," and (3) later drafts of the special verdict form circulated by SFFCU uniformly used the phrase, "unfairly and without good faith." The record thus indicates the single use of "unfairly or without good cause" was likely a typographical error rather than an argued position by SFFCU.

11

*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834 is instructive. There, the jury requested a definition of "appreciable" as used in a special verdict question. (*Id.* at p. 856.) The appellants advocated on the record for one definition. (*Ibid.*) In response, the court asked if they objected to an alternative definition, and "[a]ppellants' counsel said 'No, I guess not.' " (*Ibid.*) On appeal, this court agreed appellants' objection had been waived, explaining "In all of [the cases cited by appellants,] the party alleging error had strenuously made his objection and then acted defensively to lessen the impact of the error. No waiver can be predicated on this course of action. [Citations.] Here appellants did not formally make an objection except to offer an alternative definition, and they ultimately and expressly stated that they had no objection to the court's definition." (*Id.* at p. 857.)

Likewise here, the single use of the phrase "unfairly or without good cause" does not constitute an objection to the final version of the special verdict form, even assuming it was not a typographical error. At most, the record can be interpreted as SFFCU proposing an alternative phrasing that ultimately was not adopted. While SFFCU expressly raised other objections to the special verdict form, it did not raise an objection to the use of the phrase "unfairly and without good faith." SFFCU thus has waived its challenge to the special verdict form.

### D. Special Jury Instruction No. 397

Finally, SFFCU asserts Special Jury Instruction No. 397 improperly "called attention to specific evidence and arguments made by [SFMTA] in defense of the breach of implied covenant claim." It claims the instruction "essentially told the jury that 'here's the list of lots of things [SFMTA] did in good faith.' "

12

SFFCU's argument is contradicted by the express language of Special Instruction No. 397. Nowhere does the instruction state that the enumerated actions were taken by SFMTA "in good faith." To the contrary, it states the jury "may consider SFMTA's conduct as to these areas, but not limited to these areas, in determining whether or not SFMTA acted unfairly and without good faith as to the breach of the implied covenant of good faith and fair dealing claims." This language instructs the jury they *may* consider the enumerated conduct in finding a breach of the implied covenant. In the absence of a contrary showing, and none has been shown here, we presume the jury followed the court's instructions. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803.)[3]

## II.  Exclusion of Trial Exhibit 613

Exhibit 613 constituted a video of a San Francisco Board of Supervisors committee meeting in which two supervisors questioned Kate Toran, the director of Taxis, Access and Mobility Services for the SFMTA, regarding the medallion program. SFFCU asserts the trial court erred in excluding this exhibit because it is "highly probative" of its breach of the implied covenant claim and the validity of the ongoing medallion program. We disagree.

### A.  Relevant Background

During trial, SFFCU sought to introduce into evidence Exhibit 613. The court stated SFFCU could offer "a statement that two supervisors asked the question of why hasn't the [medallion] program been closed down" and then show the video of SFMTA's representative responding to that question. The court explained, "The elimination of [the supervisors'] comments are

---

[3] Because we conclude SFFCU has failed to demonstrate error, we need not reach the parties' arguments regarding whether any error was prejudicial.

based on my view that they are unduly prejudicial and their undue prejudice substantially outweighs the probative value of what they said. [¶] What is important of what they said, in my view, is to ask the question why haven't you closed down the program, not in the way that they said it. It was sarcastic, it was poor language, and I believe that's – presents a prejudicial view."

The court indicated it could create a paraphrase of the supervisors' questions, if necessary, but instructed counsel to "first take a shot at it, see if they can agree amongst themselves."

During his examination of Ms. Toran, SFFCU's counsel did not seek to introduce any version of Exhibit 613. Instead, he questioned Ms. Toran as follows:

"Q. Has the board of supervisors questioned you about the purchased medallion program?

A. Yeah, I have attended hearings at the board of supervisors and it has certainly come up. And I have had some briefings with the board of supervisors and we have talked about taxis, the taxi program, yes.

Q. And do you recall any of those supervisors asking you why the fiction of purchased medallions still exists?

A. I had a lot of feedback and a lot of meetings and there were some very, I guess, dramatic statements from some corners. I don't remember that exact phrasing, but certainly there were some intense meetings.

Q. And was there also a question posed to you about why you are still trying to sell medallions that no one wants to buy?

A. I think there were questions along those lines. Again, I can't remember exactly, but it was certainly along those lines, yes."

**B. Analysis**

" 'A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.)

As an initial matter, SFFCU claims the trial court "prohibited [SFFCU] from introducing Exhibit 613 into evidence and from showing the jury the video clip of [Ms.] Toran's dialogue with" two members of the San Francisco Board of Supervisors. This assertion misrepresents the record. The trial court limited how Exhibit 613 could be presented to the jury. Specifically, it stated the questions posed by the two supervisors would be read to the jury, and the video of Ms. Toran's responses could be played for the jury. The court did not exclude Exhibit 613 in its entirety, and SFFCU remained able to present all of the substantive information contained in Exhibit 613 to the jury.

SFFCU next argues the tone and language used by the two supervisors would have substantiated its breach of the implied covenant claim by demonstrating SFMTA's position was objectively unreasonable and providing insight into its decision to continue the medallion program. However, SFFCU does not explain why the tone of two supervisors reflects more than just their own subjective beliefs. SFFCU does not identify any evidence indicating these supervisors were involved in the medallion program, the lease agreement between SFMTA and SFFCU, or any ongoing discussions between SFMTA and SFFCU regarding the medallion program. As such, SFFCU has not demonstrated the excluded portions of Exhibit 613 have probative value.

Based on the record before us, we do not find the trial court abused its discretion in limiting how SFFCU could utilize Exhibit 613 at trial. The trial court watched the video, explained its concern regarding the prejudicial impact of the tone and manner of questioning, and invited counsel to submit a stipulated summary of the supervisors' questions. The record reflects that the trial court properly considered Exhibit 613's admissibility and did not abuse its discretion in limiting its use.

Moreover, even if the ruling was in error, SFFCU has failed to demonstrate any resulting prejudice. "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243, that is embodied in article VI, section 13 of the California Constitution. Under the *Watson* harmless error standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred." (*Christ v. Schwartz, supra*, 2 Cal.App.5th at p. 447.) Here, SFFCU opted not to utilize Exhibit 613 or offer it into evidence. SFFCU thus asks this court to compare two scenarios, neither of which occurred—i.e., offering the exhibit in its entirety verses in its limited form. We decline to do so and conclude SFFCU has failed to demonstrate any resulting harm.

## III. Motion for Judgment Notwithstanding the Verdict and New Trial

SFFCU contends the trial court erred in denying its motion for new trial because such a motion may appropriately be based on an instructional error. We lack jurisdiction to resolve this issue because SFFCU did not file an appeal from this order.

16

" ' "Where several judgments and/or orders occurring close in time are separately appealable . . . each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' " (*Sole Energy Co. v. Petrominerals Corp*. (2005) 128 Cal.App.4th 212, 239.)  While a notice of appeal must be liberally construed, our jurisdiction is necessarily limited to the notice of appeal and those judgments or orders identified therein. (*Conservatorship of Edde* (2009) 173 Cal.App.4th 883, 889–890; *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.)  We have no jurisdiction over an order not mentioned in the notice of appeal.  (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

Here, SFFCU's notice of appeal only identifies (1) the November 3, 2021 judgment, and (2) the December 30, 2021 order on SFFCU's motion to tax costs.  Moreover, we note SFFCU filed its notice of appeal on January 11, 2022, and the trial court did not enter its order on SFFCU's motion for judgment notwithstanding the verdict and new trial until January 26, 2022. When an appellant "wishes to challenge an appealable postjudgment order that is rendered after appellant files a notice of appeal from the judgment, appellant must file a *separate notice of appeal* from the postjudgment order. Appellant cannot obtain review of the postjudgment order simply by including the postjudgment proceedings in the record on appeal from the judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 3:119.2; see also Code Civ. Proc. § 904.1, subd. (a)(2).)  Accordingly, the trial court's order denying SFFCU's motion for judgment notwithstanding the verdict and new trial is outside the scope of this appeal, and we lack jurisdiction to review it.

17

**DISPOSITION**

The judgment is affirmed.[4]  SFMTA may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[4] Because we affirm the judgment, we deny SFFCU's request that we reverse the order taxing costs and awarding SFMTA costs.

_____
Petrou, J.

WE CONCUR:


_____
Rodríguez, P. J.


_____
Jackson, J.*

A164463/*San Francisco Federal Credit Union v. San Francisco Municipal Transportation Authority*

_____

\* Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.